[No. 1535.   Decided April 1, 1895.]

CHARLES T. WOODING, *Appellant,* v. THE PUGET SOUND NATIONAL BANK *et al., Respondonts.*

GARNISHMENT — WHO SUBJECT TO — ABANDONMENT — EFFECT OF REPEAL-
ING STATUTE.

A trespasser in possession of another's goods cannot be charged as garnishee of the owner.

Proceedings against garnishees should be prosecuted by the creditor with reasonable diligence; and the failure of a creditor to prosecute his claim for a period of two years after service of the writ is sufficient to defeat his rights thereunder.

Where a law giving a right to garnishment proceedings has been repealed subsequent to the commencement thereof, and the repealing act contains no saving clause, the effect of the repeal is to quash pending proceedings.

*Appeal from Superior Court, King County.*

*Smith & Littell,* and *Blaine & De Vries,* for appellant:

A garnishee in the possession of money, which he has no right to retain, cannot hold it as against a writ of garnishment.   Wade, Attachment, § 337; *Swett v.*

*Brown*, 5 Pick. 178; *DeGraff v. Thompson*, 24 Minn. 452; *Rickers v. Simcox*, 1 Utah, 33.

*Carr & Preston, Struve, Allen, Hughes & McMicken*, and
   *W. R. Bell*, for respondents:

It is a generally recognized principle that the rights of the garnisher do not rise above or extend beyond those of the debtor; that the garnishee shall not, by operation of the proceedings against him, be placed in any worse condition than he would have been in had the principal debtor's claim been enforced against him directly; that the liability, legal and equitable, of the garnishee to the principal debtor is a measure of his liability to the attaching creditor, who takes the shoes of the principal debtor and can assert only the rights of the latter. *Rice v. Bank*, 56 N. W. 776; *Henry v. Wilson*, 51 N. W. 1157; *Dawson v. Iron Range Co.*, 56 N. W. 108; *Huntingdon v. Risdon*, 43 Iowa, 518; *Foundry v. Mortimer*, 19 Am. Dec. 267; *Sauer v. Nevadaville*, 23 Pac. 87; *Mill Co. v. Steel Co.*, 14 Sup. Ct. 710; *Cota v. Mishow*, 62 Me. 124.

The garnishee process, as known to our law, only reaches debts or credits owing to, or held for, the defendant in the principal action by the garnishee as the property of the defendant. A trespasser in possession of another's goods cannot be charged as garnishee of the owner. *Despatch Line v. Bellamy Co.*, 37 Am. Dec. 219; *Commercial Exchange Bank v. McLeod*, 19 N. W. 329 (54 Am. Rep. 36); *Richardson v. Anderson*, 18 S. W. 195; *Robinson v. Howard*, 61 Mass. 257; *Morris v. Penniman*, 14 Gray, 220 (74 Am. Dec. 675); *Connolly v. Thurber*, 18 S. E. 1004.

It is a well settled principle of law that, where the debt of the garnishee to the defendant is barred by the statute of limitations, he may take advantage of the

statute just as he could if sued by the defendant. Drake, Attachments (5th ed.), § 678; *Hazen v. Emerson*, 9 Pick. 144; *Benton v. Lindell*, 10 Mo. 557; *James v. Fellowes*, 20 La. An. 116; *Crossman v. Crossman*, 21 Pick. 21; 2 Wade, Attachments, § 520.

The opinion of the court was delivered by

Scott, J.— On the 28th day of May, 1889, appellant brought an action in the superior court of King county against one William M. White, to recover $2,214.50, with interest. A writ of attachment was issued in said cause and on said day served on the respondents, the sheriff giving to each of the respondents a notice in writing that all debts, credits, moneys or other personal property in their possession, or due by them or either of them to said William M. White, were levied upon, and requesting each of the respondents to furnish him with a memorandum thereof, which they failed to do. On the 10th day of October, 1890, appellant obtained judgment against White in said action. On the 6th day of January, 1891, appellant submitted to said court an affidavit showing the foregoing facts and that the respondents had up to said time refused to furnish any written memorandum, etc.; and prayed an order from said court citing each of said respondents to appear and answer under oath respecting such debts, credits or other personal property owing by them or in their possession, belonging to said White.

It does not appear that any action was taken thereon by the court, and it is conceded that the respondents were not then cited, and that nothing further was done in the premises until the 29th day of March, 1893, when another affidavit to the same effect was submitted and an order was issued thereon citing respondents to appear in said court on the 1st day of May, 1893, and

answer under oath respecting such debts and property. The respondents appeared specially in response to said orders, and although said matter was several times continued by consent, their rights under such special appearance were at all times reserved, and upon the final hearing respondents moved to dismiss said proceedings in garnishment on the ground that any rights which the appellant had acquired by reason of the service of the writs of garnishment had become barred by lapse of time and by the statute of limitations.

The motion was denied and certain officers of the respondent banks were examined, and substantially the following circumstances were developed: On the 25th day of May, 1889, said White sold to the Puget Sound National Bank of Seattle two drafts purporting to be cashier's drafts, one for the sum of $5,500 and the other for $2,500; and also at said time sold to the bank a certificate of deposit for $1,000; and the amount of said drafts and certificates, less a small percentage for exchange, and $380, which he left with instructions to pay off a certain obligation, was paid to White thereon. Near the same time and upon the same day White called at the First National Bank of Seattle, where he had previously transacted some business and then had a balance of $258.05 to his credit, and deposited with this bank a check purporting to be for $2,500, drawn by a bank in Montana, and another check for $100; and the total amount was placed to his credit; whereupon White drew a check for $2,400 upon this bank, which was paid to him in money. He also negotiated certain other checks, amounting to nearly $400, upon this bank, which were thereafter paid. The $380 left by White at the Puget Sound National Bank was paid by the bank as White had directed.

By virtue of these proceedings White obtained from

the Puget Sound National Bank the sum of $9,000, less the exchange aforesaid, and from the First National Bank nearly $2,800. Subsequent investigations developed the fact that the draft purporting to be for $5,500 negotiated with the Puget Sound National Bank, had been originally made as a draft for $55, and had been raised to $5,500; and the draft purporting to be for $2,500 had been originally made for $25 and raised to $2,500; and the draft negotiated with the First National Bank purporting to be for $2,500 had also originally been drawn for $25 and had been raised to $2,500.

The Puget Sound National Bank recovered on the certificate of deposit, which was genuine, $1,000; so that the amount fraudulently obtained from this bank was $8,000. The two forged drafts presented to the Puget Sound National Bank were never presented for payment, being used in a criminal prosecution against White which resulted in his conviction for forgery, and nothing was realized on them. The small checks drawn by White upon the First National Bank, and paid by it, exceeded in amount the aggregate to his credit and all collections made by the bank upon the checks; so that the amount of money which White had fraudulently obtained from the First National Bank exceeded the sum of $2,400.

The forgeries were discovered within a few hours, and immediate pursuit of White was made and a considerable sum was expended by the banks in trying to capture him and recover possession of the money. It is claimed that the money so expended could be charged to White and recovered of him, the expenditure having been induced by his fraudulent acts and representations.

The appellant was conducting a banking business at

Aberdeen in this state, and his cause of action against White was to recover for money which had been obtained from him by White in a manner very similar to that in which the money aforesaid was obtained from the respondents; and he had published a notice of a reward for his arrest. Within a short time after said transactions between White and the respondents, White left for Snohomish and was there arrested by the sheriff of Snohomish county who had seen the published notice of a reward for his capture, and who suspected White to be the person wanted. Said sheriff had no warrant for White at the time and did not obtain any. Meanwhile a warrant had been issued to the sheriff of King county for White's arrest upon the charge of forgery, and the next day said sheriff found White in Seattle in the charge of the sheriff of Snohomish county. In pursuance of an arrangement entered into with said sheriff of Snohomish county, the sheriff of King county there took White into custody under the warrant aforesaid. White had with him a package containing $2,000 in currency, which was in an envelope bearing the stamp of the Puget Sound National Bank. Said currency was in packages of $500, each package being fastened with a band bearing the stamp of said bank; and White admitted that this was part of the identical money he had obtained from that bank the day previous. This money was taken by the sheriff and turned over to the cashier of said bank as the bank's property. White made no objection thereto. A few dollars in silver were also found upon White's person at this time, which were placed in a safe at the sheriff's office, and afterwards disbursed as White directed.

White's mother had accompanied him from Seattle to Snohomish after he had received the money at the

respondent banks, and was with him at the time of his arrest. She was also arrested by the sheriff of King county for complicity in the crime, and was accused of having part of the money, and was urged to surrender it. After some conversation upon this subject she told the sheriff that if he would permit her to go to a room by herself she would bring him the money. Her request was complied with, and in a short time she returned and delivered to said sheriff $8,000 in currency. All of the bills were in $500 packages, with the exception of a thousand dollar bill and one broken package, which had no band around it. On this occasion Mrs. White informed said sheriff that at the time White was first arrested this money was concealed in her satchel, between the lining and the outside; that the officers had searched the satchel, but had failed to find the money; that after her arrest, and when she had been permitted to go to her room to lie down, she had taken the money from the satchel and sewed it into a thick skirt which she was wearing. The bands around the different packages of this money bore the stamps of the two banks, with the exception of the one from which the band had been apparently broken. The cashier of the Puget Sound National Bank identified the thousand dollar bill as one paid by said bank to White at the time he obtained the money aforesaid. This money was delivered by the sheriff to the Puget Sound National Bank, and $2,400 of it was turned over by said bank to the First National Bank, being the amount White had received from the latter bank. The total amounts received from White were less than the claimed indebtedness of White to the banks.

A judgment was rendered in favor of the respondents upon the hearing, and this appeal was taken therefrom.

The lower court found that the respondents were not indebted to White and had no property in their possession belonging to him.    The proof tended strongly to show that all of the money obtained from White and his mother as aforesaid, with possibly the exception of a few dollars, was the identical money which White had obtained from the respondents.    Appellant insists that even if this were so the sheriff had no right to take possession of the money and restore it to the banks.    But clearly this might have been done with the consent of the parties from whom the sheriff obtained it, and we think the facts would warrant a finding that the sheriff had the consent of these parties in restoring the money as aforesaid.    White admitted that the money surrendered by him personally was a part of the identical money he had gotten from the Puget Sound National Bank, and it was turned over to the officers of the bank in his presence without any objection.    The $8,000 obtained from Mrs. White was voluntarily surrendered by her.    She apparently knew from whom it had been obtained and how, and that the intention was to restore it to its rightful owners. Neither of said parties has at any time since then undertaken to recover said money or any part of it, or brought any action for the taking against any of the parties concerned.    And this tends strongly to support the claim that the money was restored with their consent.

Aside from this, however, and conceding that the money was taken from them without their consent and against their will, and that the officer acted as a trespasser in so doing, we are of the opinion that under the authorities it was not subject to garnishment while in his hands or in the hands of the parties to whom it was delivered.    The garnishment process only reaches

debts or credits owing to or held for the defendant in the principal action by the garnishee, or property of the defendant held by the garnishee as the property of the defendant. A trespasser in possession of another's goods cannot be charged as garnishee of the owner. *Despatch Line v. Bellamy Mfg. Co.*, 12 N. H. 205 (37 Am. Dec. 203), *Commercial Exchange Bank v. McLeod*, 65 Iowa, 665 (19 N. W. 329, 54 Am. Rep. 36); *Richardson v. Anderson*, 18 S. W. 195.

We are also of the opinion that the point first raised by the respondents was well grounded, and that the appellant should have been held to have lost his rights under the writs of garnishment by a failure to prosecute. Waiting for two years after the service before citing the garnishees to appear and answer should be held equivalent to an abandonment of said proceedings, regardless of the fact as to whether such final action was barred by the statute of limitations. A creditor should diligently prosecute his proceedings against garnishees. The service of the writs upon the garnishees was not the commencement of an action against them. No issue was formed which they could force to trial, and they were not put in a position where they could take any action in the premises to have the question of their liability put at rest. Such action rested with the plaintiff creditor, the moving party, and he should be required to prosecute the same with reasonable diligence.

A further point had been urged here which was not raised in the lower court, but which is claimed to be yet available as going to the jurisdiction of the court in the premises. The attachment garnishment law under which the first proceedings were had was repealed before the respondents were cited to appear and testify. The repealing act was approved March 8,

1893, and it contained no saving clause; and it is contended that as such repeal was absolute and unconditional, the effect was to quash all pending proceedings.    This point also seems to be well taken.    Endlich, Interpretation of Statutes, §§ 478–480.

Affirmed.

HOYT, C. J., and DUNBAR and GORDON, JJ., concur.

ANDERS, J. (*concurring*).—I fully concur in the conclusion arrived at in the foregoing opinion, but upon the point as to whether the service of writs of garnishment is or is not the commencement of an action against the garnishees, I do not wish to be understood as expressing an opinion.