[No. 1345-1.    Division One—Panel 2.    May 21, 1973.]

BOUNDARY DAM CONSTRUCTORS *et al., Plaintiffs,* v. LAWCO CONTRACTORS, INC., *et al., Defendants,* GRAYBAR ELECTRIC Co., INC., *Appellant,* SEATTLE-FIRST NATIONAL BANK, *Respondent.*

*Johnson, Quigley, Hatch & Loveridge, Willard Hatch,* and *Thomas T. Glover,* for appellant.

*Davis, Wright, Todd, Riese & Jones, Nancy P. Gibbs,* and *Edward N. Lange,* for respondent.

HOROWITZ, J.—This is an appeal from a summary judgment in interpleader proceedings awarding $119,221, the proceeds of a judgment, to respondent Seattle-First National Bank, as assignee of the judgment and of the cause of action on which the judgment was entered. The bank's right to the proceeds, in light of the contentions of the parties, turns on the validity of the garnisheeing creditor's August 1968 writ of garnishment of an unliquidated claim

owed by the garnishee defendant to the debtor. The facts are these.

Boundary Dam Constructors, as general contractor for the construction of a dam, entered into a subcontract with Lawco Contractors, Inc. for performance of certain electrical work. Lawco substantially completed its subcontract, but made claims for damages greatly in excess of the compensation called for in its subcontract. The nature of these claims will later appear. On June 10, 1968, Lawco sued the general contractor and its sureties for over $970,000. On August 12, 1968, the general contractor answered denying liability and alleging a setoff and counterclaim for overpayment and damages for breach of the subcontract for sums exceeding $600,000.

In August 1968, Graybar Electric Co., Inc. commenced a separate action against Lawco to recover $36,178.80 for materials supplied to Lawco. Simultaneously, Graybar caused a writ of garnishment to be issued and served against Boundary Dam Constructors to sequester all funds due Lawco up to $36,178.80, plus interest and costs. On August 21, 1968, Boundary Dam Constructors answered denying any indebtedness owing to Lawco, and referred therein to the pendency of Lawco's June 10, 1968 contract action against Boundary Dam Constructors and the latter's setoff and counterclaim against Lawco. In September 1968, the respective attorneys for Graybar and Boundary Dam Constructors executed a stipulation in the Graybar action agreeing

> that the Writ of Garnishment herein shall be deemed effective in the event any sums, whether by settlement or court adjudication, prove to be due and owing from Garnishee Defendant to Lawco Contractors, Inc., and said sums, if any, shall be subject to the garnishment proceedings herein.

The stipulation was filed on November 18, 1968, in the Graybar action, and on December 6, 1968, in Lawco's contract action. Lawco was not a party to the stipulation and there is no evidence that Lawco actually knew of, ac-

quiesced in, or agreed thereto. When the stipulation was executed, Lawco's contract action against the general contractor was still pending.

On January 14, 1971, Lawco executed a security agreement assigning to the Seattle-First National Bank the proceeds owing to Lawco by Boundary Dam Constructors on the "judgment entered" in the contract action. The assignment was then perfected by filing of a financing statement with the Secretary of State of Washington on January 21, 1971. On April 26, 1971, Lawco also executed and delivered to the bank an assignment of "any judgment rendered in favor of" Lawco in the contract action. The assignment was filed in the contract action between Lawco and Boundary Dam Constructors on May 3, 1971. On May 17, 1971, Lawco recovered judgment for $119,221 in the contract action against Boundary Dam Constructors and its sureties. This sum represented the difference between a total recovery of $480,000 and a setoff of $360,779. Finding No. 70 characterizes the amount recovered as a "net recovery of $119,221, which is an unliquidated amount." On July 2, 1971, the garnishee defendant filed an amended answer admitting it owed Lawco the amount of the judgment entered in the contract action, setting forth the names of possible claimants, including the bank, to the sum owing. Boundary Dam Constructors subsequently paid the net sum awarded into court for disposition in the interpleader proceedings below.

Competing claims were then filed to the interpleaded fund. Graybar made a claim of $36,178.80, plus interest and costs. It claimed the right to prior payment by virtue of its August 1968 writ of garnishment, the amended answer to the writ, the September 1968 stipulation, and the default judgment obtained by Graybar against Boundary Dam Constructors for the funds garnished. The Seattle-First National Bank claimed the right to payment ahead of Graybar for the full sum of $119,221. The bank relied upon the January 14, 1971 assignment previously perfected through filing and the April 26, 1971 assignment of the judgment in favor of Lawco against Boundary Dam Constructors in the

contract action, which assignment had been filed therein on May 3, 1971.

The trial court held that the judgment proceeds should be paid over to the bank because the August 1968 writ of garnishment sought to reach an unliquidated claim and therefore created no lien in favor of Graybar. Graybar appeals. We agree with the judgment of the trial court and affirm.

The disposition of the contentions of the parties requires a brief description of certain rules applicable to garnishment proceedings in August 1968 when Graybar's writ of garnishment was issued.

In *Sadler v. Wagner*, 3 Wn. App. 353, 475 P.2d 901 (1970), the court states:

> Garnishment is a statutory remedy which contemplates the existence of three distinct parties or entities. The writ of garnishment directs a third person, the garnishee, who holds money or property of the judgment debtor, not to deliver the money or property of the judgment debtor but to appear and answer the plaintiff's writ of garnishment.

3 Wn. App. at 355. Garnishment being statutory, compliance with the applicable statutes is essential to the validity and preservation of the writ. *Pacific Coast Paper Mills v. Pacific Mercantile Agency*, 165 Wash. 62, 66, 4 P.2d 886 (1931); *Mahomet v. Hartford Ins. Co.*, 3 Wn. App. 560, 564-65, 477 P.2d 191 (1970); *Snyder v. Cox*, 1 Wn. App. 457, 462 P.2d 573 (1969). If the writ lies, it is effective when served upon the garnishee, subject, however, to the subsequent entry of judgment. *Bassett v. McCarty*, 3 Wn.2d 488, 101 P.2d 575 (1940); *Bair v. Wiese*, 124 Wash. 691, 695, 215 P. 61 (1923); *Hawley v. Isaacson*, 117 Wash. 197, 202, 200 P. 1109, 21 A.L.R. 268 (1921).

RCW 7.32, now replaced by RCW 7.33 but in effect when the writ of garnishment was issued here, permits the writ to be issued on specified grounds only. RCW 7.32.010(2) permits the writ to be issued:

> Where the plaintiff sues for a debt and makes affidavit

that such debt is just, due and unpaid, and that the garnishment applied for is not sued out to injure either the defendant or the garnishee.

In *Sundberg v. Boeing Airplane Co.*, 52 Wn.2d 734, 328 P.2d 692 (1958), the court pointed out, however:

> To support garnishment, the garnishee defendant must be indebted to the principal debtor. . . . An unliquidated claim is not subject to garnishment. *Bassett v. McCarty*, 3 Wn. (2d) 488, 497, 101 P. (2d) 575 (1940).

52 Wn.2d at 737. *See generally* 6 Am. Jur. 2d *Attachment and Garnishment* § 127 (1963).

RCW 7.32.150 requires the garnishee defendant to answer the writ lest a default judgment be entered against him. RCW 7.32.170. If the plaintiff is not satisfied with the answer,

> he may controvert the same by affidavit in writing signed by him, stating that he has good reason to believe and does believe that the answer of the garnishee is incorrect, stating in what particulars he believes the same is incorrect.

RCW 7.32.250. The plaintiff has 20 days within which to file the controverting affidavit. *Snyder v. Cox*, 1 Wn. App. 457, 462 P.2d 573 (1969). RCW 7.32.260 provides:

> The defendant may also in like manner controvert the answer of the garnishee.

If the answer of the garnishee is controverted in the manner stated, the issue is tried on pleadings consisting only of

> the affidavit of the plaintiff, the answer of the garnishee and the reply of the plaintiff or defendant controverting such answer, unless otherwise ordered by the court.

RCW 7.32.270.

RCW 7.32 did not preclude the debtor's right to be heard on whether a writ of garnishment would lie, nor did it provide that a garnishee defendant, without the debtor's consent, could waive or modify the debtor's rights or agree to a setoff affecting him. Indeed, the general rule does not permit the garnishee defendant so to do. *See Portland Ass'n*

*of Credit Men, Inc. v. Earley,* 42 Wn.2d 273, 254 P.2d 758 (1953); Annot., 64 A.L.R. 430 (1929); Annot., 45 A.L.R. 646 (1926); 6 Am. Jur. 2d *Attachment and Garnishment* § 356 (1963).

The threshold question presented is whether Lawco's claim against Boundary Dam Constructors, which Graybar sought to sequester by its writ of garnishment to pay its claim against Lawco, is an unliquidated debt and, accordingly, not subject to the writ. The garnishee defendant's answer of August 20, 1968, filed in the Graybar case the next day, stated:

> when the writ of garnishment was served on the garnishee there was due and owing from the garnishee to the above-named defendant $ <u>None.</u>

The answer then referred to the pending contract action in which Lawco

> is claiming an indebtedness due and owing from the Defendants and these Garnishee Defendants in the sum of $970,000.00 together with interest, costs and attorney's fees which indebtedness is denied by the Defendants therein and Garnishee Defendants herein and wherein the Defendants and these Garnishee Defendants are claiming an indebtedness due and owing from Lawco Contractors, Inc. and others for the sum of $485,277.25 together with interest thereon from July 16, 1968 until paid, together with the additional sum of $116,000.00 together with interest and costs by reason of all of which the Garnishee Defendants herein deny any indebtedness due, owing or unpaid to Lawco Contractors, Inc. at the time of service of the Writ of Garnishment herein.

By this answer, Graybar was put on notice that the "debt" sought to be sequestered was unliquidated, a characterization confirmed on trial of the contract action. Findings No. 39, 43, 44, 46, 52, 63, 64, 67 and 70 entered in the contract action make clear the unliquidated character of Lawco's claim. Thus, finding No. 63 reads:

> The Court finds that increased costs were incurred as a consequence of delays and suspensions and accelerations of the work, resulting from numerous design changes, late issuance of revised construction drawings and conse-

quent late issuance of lift drawings, lateness of arrival of city-furnished materials and equipment and improper fitting of certain city-furnished materials and equipment, and in the main, Seattle City Light was responsible therefor. Other factors and entities contributing thereto per finding 39 page 39 were changes in design; changes in scheduling; acceleration and delays; mistakes and errors; underbidding and low unit prices; failure to measure quantities and demand measurement of quantities; failure to pay attention to paperwork; failure to claim promptly and with proper backup at the right time; poor management or supervision at the management level due to inexperience; inattention and unfortunate accidents; undercapitalization; strikes; cessation of work; late issuance of drawings; conflicting issuance of drawings; adverse weather; other contractor's mistakes; problems not anticipated by anyone arising from underground operations and disputes between top personnel of City and BDC. It is also apparent that to a considerable degree all entities involved did not fully appreciate and anticipate the difficulties inherent in the construction of the underground facilities, and these difficulties caused costs in an amount greater than was generally anticipated.

■ Finding No. 70 describes the sum of $119,221, plus attorney's fees, adjudged as owing after trial, as "an unliquidated amount." This finding finds further support in those cases holding that the existence of Boundary Dam Constructors' unliquidated setoff was sufficient to make Lawco's claim unliquidated, although the case law thereon is divided. *See* 6 Am. Jur. 2d *Attachment and Garnishment* § 128 (1963).

Graybar contends that before it may be said that a debt cannot be garnished it must be contingent, as well as unliquidated. It argues that Lawco's contract action was not an action on a contingent debt, but rather on a noncontingent one to recover compensation for substantial completion of its subcontract. Finding 33. We do not agree. Lawco's claim against Boundary Dam Constructors, as the findings confirm, was for substantial damages in addition to compensation based on substantial performance of the subcontract. Furthermore, whatever may be the rule elsewhere, in this

state the rule is that the writ of garnishment does not lie if the debt garnished is unliquidated. *Sundberg v. Boeing Airplane Co., supra.*

■ Graybar then contends that Seattle-First National Bank, as Lawco's successor in interest, is in no position to object to the validity of the writ and the subsequent stipulation in the Graybar action because Lawco did not file a controverting affidavit as permitted by RCW 7.32.260 within 20 days after answer to the writ, or at all. The garnishee's answer, however, denied liability and specifically described the pending contract action and the claims of the respective parties which gave notice of the unliquidated character of Lawco's debt sought to be garnished. Lawco could rightfully assume from the garnishee's answer, which was favorable to its position, that the garnishee would not and, indeed, could not agree to waive any defense to the writ Lawco might have, unless with Lawco's knowledge and consent, whether by way of an amended answer to the writ or by a stipulation to which Lawco was not a party. A defense to the writ available to Lawco was that the debt was unliquidated. Had the garnishee not answered or answered incorrectly, Lawco in self-protection could have filed a controverting affidavit as permitted by RCW 7.32.260. The garnishee defendant, however, having denied liability in its answer and having therein given notice of the unliquidated nature and character of Lawco's "debt," there was no need for Lawco to repeat by its affidavit the defense already raised to the writ. Furthermore, there is no affirmative showing that Graybar, aware of the contents of garnishee's answer to the writ, changed its position in reliance upon Lawco's failure to file a controverting affidavit.

■ The conclusion that the writ did not lie is further supported by the fact that Graybar, to preserve its continued right to the benefits of the writ, was mandatorily required to file a controverting affidavit within 20 days after service of the garnishee's answer denying liability and that failure so to do "was fatal to [Graybar's] cause."

*Snyder v. Cox, supra* at 460; *Mahomet v. Hartford Ins. Co., supra.*

██ Nor can it be reasonably said that the September 1968 stipulation constituted a controverting affidavit within the meaning of RCW 7.32.250, or that the stipulation waived the necessity for complying with that statute vis-a-vis Lawco and the bank as its successor in interest. The stipulation did not contain the statements required to be included in a controverting affidavit by the cited statutes. Furthermore, the stipulation, if considered a controverting affidavit, was defective in two respects. The stipulation was signed only by the attorneys for Graybar and Boundary Dam Constructors, and the stipulation was not filed within 20 days from the service of the garnishee defendant's answer. *Snyder v. Cox, supra.* To make Lawco subject to the obligations of the stipulation, it would have been necessary to make Lawco a party thereto. Lawco was not a party to the stipulation, and the record fails to show that Lawco even knew of its existence or acquiesced therein. It is true that the stipulation was later filed in the Graybar suit and in the contract action. Such filing, however, was not constructive notice to Lawco of the existence of the stipulation, much less of Lawco's acquiescence therein. *See* 58 Am. Jur. 2d *Notice* § 20 (1971); 66 C.J.S. *Notice* § 13(c) (1950).

The garnishee defendant's amended answer of July 2, 1971 apparently attempted to fulfill what was required by the September 1968 stipulation, which was not binding on Lawco. Any rights created by such amended answer were subject to the bank's prior and intervening rights based on the Lawco assignments. The amended answer could not, over the bank's objection, retroactively restore to validity as of the date of the service of the writ of garnishment, the garnishment lien unsuccessfully attempted to be created or preserved in 1968.[1]

---

[1]The bank also urges an additional ground for invalidating the writ of garnishment, namely, that Graybar's writ was quashed by operation of law when RCW 7.32 was repealed without a savings clause ar

■ Graybar finally contends that the bank's arguments directed to invalidating the writ, additional to those resting on the unliquidated character of the debt, should not be considered because not raised below. The rule is, however, that a trial court's judgment can be sustained on any ground within the record whether or not urged before the trial court. *State v. Carroll*, 81 Wn.2d 95, 500 P.2d 115 (1972); *Osborn v. Public Hosp. Dist. 1*, 80 Wn.2d 201, 492 P.2d 1025 (1972); *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970).

The judgment is affirmed.

CALLOW, J., concurs.

WILLIAMS, J. (concurring) — *United Pac. Ins. Co. v. Lundstrom*, 77 Wn.2d 162, 459 P.2d 930 (1969) and *Sundberg v. Boeing Airplane Co.*, 52 Wn.2d 734, 328 P.2d 692 (1958) are controlling. I concur in the result.

---

to pending writs. It cites *Wooding v. Puget Sound Nat'l Bank*, 11 Wash. 527, 40 P. 223 (1895). We believe we should leave the question open. The question raised is best answered when the answer given is essential to the disposition of the case. *See State v. Palmer*, 5 Wn. App. 405, 409, 487 P.2d 627 (1971).