[No. 12130–8–I. Division One. June 10, 1985.]

HINOTE'S HOME FURNISHINGS, INC., *Appellant,* v. OLNEY & PEDERSON, INC., *Defendant,* DARCY ISAMAN, ET AL, *Respondents.*

*Sherwood, Bentley & Anderson* and *Robert B. Sherwood,* for appellant.

*Gary M. Rusing,* for respondents.

SCHOLFIELD, A.C.J.—Hinote's Home Furnishings, Inc., plaintiff below, appeals the judgment entered against Darcy

Isaman, garnishee below, contending that the trial court erred (1) in refusing to add prejudgment interest to the debt owed by Isaman to Olney & Pederson, Inc., which was garnished by Hinote's, (2) in refusing to award to Hinote's the cost of the deposition of David Olney, and (3) in refusing to award to Hinote's its attorney fees for successfully controverting Isaman's answer. Isaman cross–appeals, contending that the claim against him by Olney & Pederson was unliquidated and, therefore, not subject to garnishment by Hinote's.

## FACTS

On January 22, 1982, Hinote's and Olney & Pederson, a Washington corporation in the construction business, filed a consent judgment, stating that Olney & Pederson owed Hinote's $5,361.43 plus interest and costs. In early February 1982, Hinote's applied for and obtained a writ of garnishment against Darcy Isaman and his wife as alleged debtors of Olney & Pederson. Isaman and his wife answered this writ, stating that to the best of their knowledge, they owed nothing to Olney & Pederson. On March 9, 1982, Hinote's filed an affidavit controverting the answer, stating that based on depositions taken of Isaman and David Olney, the president of Olney & Pederson, Hinote's knew that Isaman owed Olney & Pederson $8,185.42. This affidavit specified 13 items and their costs, which Hinote's claimed were "extras" supplied by Olney & Pederson in building Isaman's home in 1979.

A trial to the court took place on August 4, 1982. Hinote's called David Olney as an adverse witness. He testified that Olney & Pederson had contracted to build a home for Isaman in February 1979, that it had completed the home in December 1979, and that Isaman had paid the contract price: $80,000 plus Washington state sales tax. Olney testified that the agreement between Olney & Pederson and Isaman was that Olney & Pederson would build the house for a 5 percent profit. He testified that he had kept track of the cost of materials and labor as the house was being built

and that money had been saved in laying the foundation and in framing the house; therefore, additional items were furnished to Isaman that were not in the contract because the house was under budget.

Olney testified that a $2,371 heat pump and $988 worth of dock materials were truly "extras" in the sense that they were not to be "absorbed" into the overall $80,000 contract price. In response to questions from the trial judge, Olney also testified that the contract had stated that Isaman would roof the house himself, but that Olney & Pederson ended up doing this for a cost of $349.20, which he (Olney) also considered to be a true "extra". Olney testified regarding other additional items furnished, for example, siding, extra insulation, extra wiring, and cabinets, but claimed that all of these items were "absorbed" into the contract price because of the money saved in laying the foundation and in framing.

Early in Olney's testimony, counsel for Isaman conceded that the heat pump and dock materials were true "extras". He did, however, contest the $349.20 charge for roofing. Also, counsel did not contest that the amounts for each item were accurate. In fact, at one point, he conceded that the "numbers are proper numbers" and that "we don't contest the values and the prices are reasonable."

At one point in his testimony, Olney stated that Olney & Pederson had gone out of business in January 1980, 1 month after completing Isaman's house. At another point, he testified that Olney & Pederson might still be registered in Washington. It is clear that the corporation did no business after the early months of 1980.

## CROSS APPEAL

Isaman contends that the trial court erred in denying his motion to dismiss because the claim of Olney & Pederson against him was unliquidated and, therefore, not subject to garnishment. He argues that Olney & Pederson never filed a claim against him and that David Olney, himself, testified that he was not sure of the amount owed because of his

own negligence in managing the construction. Isaman argues that the amount owed was never exact until the trial judge used his discretion to decide which items were true "extras". He relies upon *Boundary Dam Constructors v. Lawco Contractors, Inc.*, 9 Wn. App. 21, 510 P.2d 1176 (1973).

It is well settled in Washington that an unliquidated claim is not subject to garnishment. *Bassett v. McCarty*, 3 Wn.2d 488, 101 P.2d 575 (1940); *Sundberg v. Boeing Airplane Co.*, 52 Wn.2d 734, 328 P.2d 692 (1958); *Boundary Dam Constructors v. Lawco Contractors, Inc., supra.* However, what is perhaps less well settled is what constitutes an unliquidated claim. Washington courts have expressly defined an unliquidated claim for the purposes of awarding prejudgment interest but not for determining whether a claim is subject to garnishment.

In *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968), the court held that a "liquidated" claim for prejudgment purposes is:

> one where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.

The court adopted Professor McCormick's explanation of the application of this definition in C. McCormick, *Damages* § 54 (1935) at page 216:

> Under this view, only those claims would be termed "unliquidated" where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed. . . . In short, it is the character of the claim and not of the defense that is determinative of the question whether an amount of money sued for is a "liquidated sum."

It follows from the foregoing that, where the amount sued for may be arrived at by a process of measurement or computation from the data given by the proof, without any reliance upon opinion or discretion after the concrete

facts have been determined, the amount is liquidated and will bear interest.

(Footnote omitted.)

██ This definition of an unliquidated claim for prejudgment interest purposes is virtually identical to the definition of such a claim for garnishment purposes set forth in 6 Am. Jur. 2d *Attachment and Garnishment* § 127 (1963) at page 652:

> It is also to be observed that there is considerable diversity of opinion as to what constitutes an unliquidated claim within the rule that unliquidated claims are not attachable or garnishable. But generally, claims for an amount depending upon a standard of measure not a matter of opinion may be attached or garnished. Likewise, claims on accounts between parties, which are uncertain merely because such accounts, which are not subject to any matter of opinion, are unsettled and unadjusted, are not ordinarily, for that reason, exempt from process.

(Footnotes omitted.) It is also consistent with the court's holdings in *Bassett v. McCarty, supra* (jury verdict, prior to entry of judgment, is an unliquidated claim), *Sundberg v. Boeing Airplane Co., supra* (right to payment under a contract, contingent upon completion of the contract, which had not been completed, is an unliquidated claim), and *Boundary Dam Constructors v. Lawco Contractors, Inc., supra* (subcontractor's claim for increased costs resulting from delays, suspensions and accelerations of the work, design changes, improper equipment, adverse weather, etc., is unliquidated).

In *Boundary Dam Constructors,* the exact amount of the increased costs, which were allegedly due to poor management, strikes, accidents, etc., could not be definitely fixed. Here, however, the exact amount owed could be easily computed. All that was at issue was whether certain items were "extras"; the exact cost of each "extra" was fixed and not in dispute. Counsel for Isaman conceded this at trial. The only determination made by the trial judge was whether an item constituted an "extra", not how much each

"extra" was worth. We hold that Olney & Pederson's claim against Isaman was liquidated and, therefore, it was subject to garnishment by Hinote's.

## PREJUDGMENT INTEREST

Hinote's contends that the trial court erred in refusing to add prejudgment interest to the debt owed by Isaman to Olney & Pederson, which was garnished by Hinote's. We agree.

■ Because the claim of Olney & Pederson against Isaman was liquidated, prejudgment interest should have been added at the statutory rate under RCW 19.52.010. The rate of interest provided for in RCW 19.52.010 was increased from 6 percent to 12 percent on July 26, 1981; thus, the claim of Olney & Pederson against Isaman should have received 6 percent interest from January 1, 1980 until July 26, 1981, and 12 percent interest from July 26, 1981 until August 12, 1982, the date of judgment.

## DEPOSITION COST

Hinote's next contends that the trial court erred in refusing to award it the cost of the deposition of David Olney.

■ To be taxable as a cost, a pretrial deposition must be used as substantive evidence at trial. *Structurals Northwest, Ltd. v. Fifth & Park Place, Inc.,* 33 Wn. App. 710, 719, 658 P.2d 679 (1983). The cost of a deposition used merely for trial preparation, *Gabel v. Koba,* 1 Wn. App. 684, 693, 463 P.2d 237 (1969), or for impeachment purposes, *Washington Natural Gas Co. v. Sea–Con Corp.,* 34 Wn. App. 879, 881, 665 P.2d 405 (1983), is not awardable to the prevailing party.

Here, the deposition of Olney was used for impeachment purposes. Although part of the deposition was read into the record, it was not admissible. CR 32(a)(3)[1] provides that a

---

[1]CR 32(a) provides, in part:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used

deposition may be used for any purpose if certain conditions of unavailability exist. None of these conditions were met in this case. Olney was available and did testify; therefore, the trial court properly refused to award the cost of his deposition.

### ATTORNEY FEES

Hinote's contends that the trial court erred in refusing to award it attorney fees under RCW 7.33.290, which provides:

> Where the answer is controverted the costs of the proceeding, including a reasonable compensation for attorney's fees, shall abide the issue of such contest: *Provided,* That no costs or attorney's fees in such contest shall be taxable to defendant in the event of a controversion on the part of plaintiff.

RCW 7.33.290 *requires* that the trial court award costs, including reasonable attorney fees, if the answer is controverted. *Caplan v. Sullivan,* 37 Wn. App. 289, 294, 679 P.2d 949 (1984) (citing *Burr v. Lane,* 10 Wn. App. 661, 678, 517 P.2d 988 (1974)).

Isaman contends, however, that attorney fees under the statute should be awarded to garnishees and defendants, but not plaintiffs. Also, he contends that *he* was the prevailing party because Hinote's claimed that over $8,000 was due and the court ruled that only $3,700 was owed.

It is clear that in RCW 7.33, the Legislature distin-

---

against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

"...

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness resides out of the county and more than 20 miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

guished between the three separate parties to a garnishment proceeding: the plaintiff, the defendant and the garnishee. *See* RCW 7.33.010; 7.33.040; 7.33.110. The proviso in RCW 7.33.290 states only that the *defendant,* not the garnishee, shall not be taxed for costs or attorney fees should the plaintiff successfully controvert the answer.

Also, we do not agree that Isaman was the prevailing party. If he had conceded in his answer, as he did at trial, that the heat pump and dock materials were "extras", perhaps he could be labeled the prevailing party. However, Isaman claimed in his answer, without qualification, that he owed nothing. *See* RCW 7.33.150 (providing a sample answer that includes a provision for the garnishee to explain why he or she is uncertain regarding any amount owed to the defendant). We hold that the trial court erred in not awarding attorney fees to Hinote's.

Finally, Hinote's requests its attorney fees on appeal. RCW 7.33.290 permits the award of reasonable attorney fees incurred on appeal. *Caplan v. Sullivan, supra* at 295. An appellate court has inherent jurisdiction to fix the amount of attorney fees for services on appeal when allowable by statute. *Caplan,* at 295 (citing *Brandt v. Impero,* 1 Wn. App. 678, 682–83, 463 P.2d 197 (1969)). We award $448 in attorney fees for this appeal.[2]

We reverse the trial court in part and remand with directions that prejudgment interest be added to the debt owed by Isaman to Olney & Pederson and that Hinote's be awarded its reasonable attorney fees for services rendered at the trial level.

RINGOLD and WEBSTER, JJ., concur.

---

[2]Counsel's affidavit filed pursuant to RAP 18.1 detailed hours and fees attributable to the trial of this case as well as the appeal. We have reduced the fees accordingly.