[No. 20442-1-III. Division Three. May 28, 2002.]

WILLIAM BARTEL, ET AL., *Respondents*, v. RICHARD ZUCKTRIEGEL, ET AL., *Appellants*.

*Joseph R. Jackson*, for appellants.
*Robert R. Siderius, Jr.*, for respondents.

SWEENEY, J. — Creditors in Washington can garnish a debtor's future earnings to satisfy a judgment. RCW 6.27.330. The earnings subject to garnishment include "compensation paid or payable ... for personal services." RCW 6.27.010(1). Here, the Café Mozart paid Richard Zucktriegel $1,600 per month. But the Café reduced his salary about the time his creditors tried to garnish his wages. The creditor challenged the reduction. And the trial court found that the Café still owed Mr. Zucktriegel $1,600 per month for his work. The court then entered judgment against the Café for the amount the Café should have withheld based on this imputed salary.

The case presents two primary questions. Are the trial court's findings and conclusions adequately supported? They are. Next, does a trial court have authority to find the amount of wages a person is owed for his or her personal services? It does. We, accordingly, affirm the judgment against the Café and the award of attorney fees and costs. We also order the Café to pay attorney fees and costs on appeal.

## FACTS

Christina Forchemer is the owner of the Café Mozart. Richard Zucktriegel began working for the Café and performed various duties. He was paid $1,600 per month in 1998 and 1999 regardless of the number of hours he worked. Mr. Zucktriegel was also given the use of a company car; the Café paid all maintenance on the car.

In December 1998, a court entered a judgment against Mr. Zucktriegel for $264,959 in favor of William and Sharon Bartel and Les Eldredge (collectively Bartel).[1] Mr. Zucktriegel filed for bankruptcy the following month.

Mr. Zucktriegel and Bartel agreed to settle for a non-dischargeable $45,000 judgment in January 2000. That same month the Café reduced Mr. Zucktriegel's salary to $1,050 per month. Mr. Zucktriegel's job responsibilities, however, "essentially remained the same." Clerk's Papers at 19. Mr. Zucktriegel married Ms. Forchemer on January 29, 2000. The Café increased Ms. Forchemer's salary. In addition to her salary, Ms. Forchemer had use of a Land Rover paid for by the Café. She also received dividends from the Café and received compensation as an officer of the Café.

Bartel served a writ of garnishment on the Café on August 25, 2000. The Café answered that Mr. Zucktriegel had earned $415.70, leaving only $16.57 to be garnished after exemptions. In December, Bartel petitioned the court to impute income to Mr. Zucktriegel for garnishment. On December 20, the court ordered income imputed to Mr. Zucktriegel in the amount of $1,600 per month until the time of trial.

Bartel served another writ of garnishment on the Café on February 13, 2001. The Café answered, but did not list Mr. Zucktriegel's income at $1,600 as ordered. Instead, the Café listed a smaller amount and said nothing remained to

---

[1] The judgment was entered because Mr. Zucktriegel fraudulently obtained funds from Bartel through false representations and false pretenses.

garnish. Bartel wrote to the Café the next day asking it to properly answer the writ based on the court's December order imputing income.

The Café amended its answer but again failed to list Mr. Zucktriegel's income as $1,600. Instead, it struck through the $1,600 figure and listed $960. The amended answer again stated that there was no income available to garnish.

Bartel moved for contempt in June 2001. The motion was continued until trial on the issue of Mr. Zucktriegel's income. They tried the case to the Honorable Ted W. Small in July 2001.

The judge found that Mr. Zucktriegel continued to perform the same work, qualitatively and quantitatively, for the Café despite the reduction in his salary. And Judge Small found that the Café had no credible business reason for reducing Mr. Zucktriegel's salary. He then concluded that the Café owed Mr. Zucktriegel $1,600 per month for his services. Based on a salary of $1,600 per month, the Café should have withheld $312.74 per month pursuant to Bartel's writ.

Judge Small also concluded that, based on the Café's answers to Bartel's writs, serving any additional writs would have been futile. He then entered judgment against the Café for $2,189.18—the amount it should have been withholding from Mr. Zucktriegel during the seven months between the court's order imputing income and the time of trial.

The court also awarded attorney fees and costs to Bartel, but refused to hold the Café in contempt. Finally, the court ordered that, absent termination or a substantial change in job duties, the Café would continue to owe Mr. Zucktriegel $1,600 per month for his services.

## ATTORNEY MISCONDUCT

Before addressing the merits of the assignments of error, we condemn a rare, unfortunate, and unwarranted attack by attorney Joseph R. Jackson on the trial judge.

Attorney Jackson questioned the integrity and objectiveness of Judge Small in his opening brief to this court:

> There are only two possible explanations for the Findings and Conclusions based upon the above . . . testimony and factual scenarios. Either the Judge chose to disbelieve all the testimony of any sort presented by all of [the Café's] witnesses and disbelieve the record and facts before the Court with respect to the garnishments filed and answered, or the Judge was in some manner intentionally biased against [the Café]. Prior to going on the bench the Judge was a partner in the same law firm as [Bartel's] counsel and has only been on the bench approximately five years.[2] *It appears that bias still exists and the trial judge intentionally favored his former partner despite all the facts and evidence to the contrary.*

Appellant's Br. at 13 (emphasis added).

First, this statement is wholly unsupported and outside of the record. And we will not consider allegations outside the scope of this court's review. *Weems v. N. Franklin Sch. Dist.*, 109 Wn. App. 767, 779, 37 P.3d 354 (2002). Second, Attorney Jackson's accusation violates RAP 10.3(a)(5) because it cites neither to the record nor any legal authority.

Finally, and most importantly, the statement appears to violate RPC 8.2(a):

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications, integrity, or record of a judge . . . .

There is simply no basis (other than losing) that supports Attorney Jackson's attack on Judge Small's integrity. It is then both unwarranted and regrettable.

### CHALLENGED FACTUAL FINDINGS

■■ The Café contends that the court erred in several of its factual findings. We review factual determinations

---

[2] Judge Small was appointed to the superior court bench by Governor Booth Gardner on June 27, 1991.

under the substantial evidence standard. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999). "Substantial evidence is that quantum sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Hanson v. Estell*, 100 Wn. App. 281, 286, 997 P.2d 426 (2000); *Miller*, 138 Wn.2d at 323. Unchallenged findings of fact are verities on appeal. *Hagemann v. Worth*, 56 Wn. App. 85, 89, 782 P.2d 1072 (1989).

It is the trial court, sitting as the finder of fact, that "must determine disputed facts by weighing the credibility of witnesses' testimony." *Johnson v. Dep't of Licensing*, 71 Wn. App. 326, 332, 858 P.2d 1112 (1993). "As an appellate tribunal, we are not entitled to weigh either the evidence or the credibility of witnesses even though we may disagree with the trial court in either regard." *In re Welfare of Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973). "Even where the evidence is conflicting, we need determine only whether the evidence most favorable to the respondent supports the challenged findings." *Miller v. Badgley*, 51 Wn. App. 285, 290, 753 P.2d 530 (1988) (citing *Thomas v. Ruddell Lease-Sales, Inc.*, 43 Wn. App. 208, 212, 716 P.2d 911 (1986)).

We reject the Café's challenges to the court's factual findings for several reasons. First, the Café fails to support its argument on any of these alleged errors with citation to authority. Appellant's Br. at 9-13. Indeed, the Café does not even discuss the applicable standard of review for findings of fact. The brief does not then meet the requirements of RAP 10.3(a)(5).

Next, the findings are amply supported by this record. The Café claims that the court erred by finding Mr. Zucktriegel continued to work the same number of hours. But at a bankruptcy hearing in June 2000, Mr. Zucktriegel represented that he was working full time. Ms. Forchemer testified that Mr. Zucktriegel had been on salary since 1997 and that while his hours have fluctuated during his employment, that fluctuation remained consistent throughout his employment.

Mr. Zucktriegel did testify that he was working fewer hours. But that is far from dispositive. The testimony was conflicting. So we need only determine "whether the evidence most favorable to the respondent supports the challenged findings." *Miller v. Badgley*, 51 Wn. App. at 290. It does.

The Café next argues that the court erred by finding its income was not accurately reflected in the net profits because of other benefits taken by Ms. Forchemer and Mr. Zucktriegel. The challenge ignores other unchallenged findings of fact and trial testimony. Mr. Zucktriegel received the use of a company vehicle for which the Café paid all maintenance. Ms. Forchemer also received the use of a Land Rover at the Café's expense. Ms. Forchemer received dividends from the Café and compensation as an officer. Finally, Mr. Zucktriegel and Ms. Forchemer took a trip to Europe paid for by the Café. The finding by the trial judge that the income remained the same was easy. *See Hanson*, 100 Wn. App. at 286.

The Café next asserts that the court's finding that Mr. Zucktriegel's job duties stayed the same is unsupported. Mr. Zucktriegel was working full time as a chef during a June 2000 bankruptcy hearing—the same job he held in 1999. Ms. Forchemer testified that Mr. Zucktriegel's duties (cooking, ordering, menu planning, and other tasks) had been the same from 1997 to the time of trial.

The trial court found that the Café presented no credible business reason for reducing Mr. Zucktriegel's salary beginning in January 2000. The Café's argument is essentially that the trial court should have believed the testimony of Mr. Zucktriegel and Ms. Forchemer. But, as we have already noted, the weight given to conflicting evidence is for the trial court to decide—not us. *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980). The court's finding that Mr. Zucktriegel continued to work the same hours and perform the same tasks adequately supports its determination that there was no credible reason given for reducing his salary. Again, it is the trial judge who deter-

mines what evidence is credible. *Johnson*, 71 Wn. App. at 332.

The Café argues that the court erred by finding it struck through the $1,600 of income and replaced that amount with its own calculation. But the Café's argument is really that it was *justified* in doing so. Regardless, the Café's answer did in fact substitute its determination of Mr. Zucktriegel's income for the court's. And the finding to that effect is supported.

 Finally, the Café argues that the court erred by finding it would have been futile for Bartel to serve additional writs of garnishment.

Following the court's December order setting Mr. Zucktriegel's income at $1,600, the Café twice disregarded that order and substituted the amount with its own calculation. The court's finding of futility—essentially that the Café would continue to answer that there were no wages available for garnishment—is then supported by the record.

Here, the Café's position, made clear by its prior answers to Bartel's writs, was that it believed Mr. Zucktriegel did not have any wages that could be garnished. The trial court's determination of futility is therefore well supported.

## JUDICIAL DETERMINATION OF WAGES

At the heart of this appeal is Judge Small's decision to impute income to Mr. Zucktriegel. The Café contends that the trial judge bypassed statutes governing garnishment and fashioned his own extrastatutory remedy by imputing income.

 The garnishment process is governed by statute. Ch. 6.27 RCW. Statutory construction is a question of law and our review is therefore de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Our goal is to effect legislative intent. *Id.*

The Café levels three attacks on the judge's order: (1) the court did not have jurisdiction to address what is really an

allegation of fraud in a garnishment proceeding; (2) the court did not have the authority to impute income to Mr. Zucktriegel; and (3) the court did not have the authority to order the Café to continue paying Mr. Zucktriegel $1,600 per month. We address each in order.

██ The Café asserts that the judge's decision was in reality based on his belief that the Café acted fraudulently. First, there is nothing in this record that would suggest as much. The Café simply argued that Mr. Zucktriegel's wages were one amount. And Judge Small, following a hearing, concluded they were another amount. And all of this was properly addressed in the controversion hearing. *See Gordon v. Hillman,* 107 Wash. 490, 492, 182 P. 574 (1919); *E.B. Millar & Co. v. Plass,* 11 Wash. 237, 238, 39 P. 956 (1895).

> To hold that a creditor cannot compel a garnishee to account for property received by him in virtue of a fraudulent and collusive arrangement with the principal debtor, would be to render the process valueless in many cases.

*Millar & Co.,* 11 Wash. at 242.

Earnings mean "compensation paid *or payable to an individual for personal services,* whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." RCW 6.27.010(1) (emphasis added).

Next, the garnishing defendant must answer the writ of garnishment and state what property and/or wages it holds that are available for garnishment. RCW 6.27.190, .340. If the creditor/plaintiff or defendant is not satisfied with the answer, either party may controvert the answer. RCW 6.27.210.

Bartel controverted the Café's answer that it owed Mr. Zucktriegel $1,050 for his personal services. The trial court conducted a trial on the disputed issue and determined that the Café owed Mr. Zucktriegel $1,600 per month for his personal services. This is the process the garnishment statute, and specifically the controversion procedure, ac-

commodates. *Millar & Co.*, 11 Wash. at 242. The trial judge can determine the compensation owed a debtor regardless of the label the compensation is given. RCW 6.27.010(1). Here, the trial judge found the Café owed Mr. Zucktriegel $1,600 per month for his personal services. That finding is adequately supported by the evidence.

## DURATION OF COURT'S ORDER

Finally, the Café asserts that the court erred by ordering it to continue paying Mr. Zucktriegel $1,600 per month indefinitely. We agree.

A continuing garnishment on a debtor's earnings is valid for only 60 days after the effective date of the writ. RCW 6.27.350. And the statutory procedures governing garnishment must be strictly complied with. *Watkins v. Peterson Enters., Inc.*, 137 Wn.2d 632, 640, 973 P.2d 1037 (1999). Bartel must, accordingly, continue to serve writs on the Café and the Café must continue to answer them. And Bartel is free to controvert those answers.

## ATTORNEY FEES

The Café contends that the trial court erred by awarding Bartel attorney fees and costs. It argues that the unique facts of this case made it impossible for the Café to file a correct answer until after the court had ruled. And punishing the Café through an award of attorney fees and costs is then contrary to the policy behind the garnishment statute. Moreover, the court did not limit its award against the Café. And there is no support for an award against Mr. Zucktriegel.

The prevailing party in a controversion proceeding is entitled to an award of attorney fees and costs:

> Where the answer is controverted, the costs of the proceeding, including a reasonable compensation for attorney's fees, shall be awarded to the prevailing party: PROVIDED, That no costs or attorney's fees in such contest shall be taxable to the defendant in the event of a controversion by the plaintiff.

RCW 6.27.230. And attorney fees and costs are likewise available to the prevailing party on appeal under the above fee provision. *Caplan v. Sullivan*, 37 Wn. App. 289, 295, 679 P.2d 949 (1984).

Here, the court awarded attorney fees and costs against only the Café. Thus, the court complied with RCW 6.27.230. Bartel was the prevailing party at the controversion hearing.

On appeal, Bartel is again the substantially prevailing party. *See Hinote's Home Furnishings, Inc. v. Olney & Pederson, Inc.*, 40 Wn. App. 879, 887, 700 P.2d 1208 (1985) (creditor was prevailing party and entitled to award of fees even though obtaining less than originally sought when garnishee defendant claimed nothing was owed). So Bartel is also awarded attorney fees and costs on appeal.

## CONCLUSION

The trial court's findings and conclusions are well supported. The court's determination of Mr. Zucktriegel's wages for his services is supported and contemplated by the garnishment statute and controversion procedure. We, therefore, affirm the judgment against the Café. The conclusion of law ordering the Café to continue paying $1,600 to Mr. Zucktriegel for an indefinite period, however, is stricken. The trial court's award of attorney fees and costs is affirmed. And Bartel is awarded fees and costs on appeal.

BROWN, C.J., and SCHULTHEIS, J., concur.