[Nos. 48915–7, 48942–4.   En Banc.   January 26, 1984.]

THE STATE OF WASHINGTON, *on the Relation of Russ Juckett, Respondent,* v. EVERGREEN DISTRICT COURT, *Respondent,* DONALD B. MARQUEZ, *Petitioner.*

THE STATE OF WASHINGTON, *on the Relation of Russ Juckett, Respondent,* v. EVERGREEN DISTRICT COURT, *Respondent,* MELODY KOLLMAR, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL P. WURM, *Petitioner.*

*Michael A. Clarke* (of *Shields & Clarke*) and *Mary Ellen Keegan,* for petitioners Marquez, et al.

*Aitken, Schauble, Patrick, Neill & Charawell,* by *Bruce A. Charawell,* for petitioner Wurm.

*Seth Dawson, Prosecuting Attorney,* for respondent Snohomish County.

*Ronald R. Carpenter, Prosecuting Attorney for Whit-*

*man County,* and *April D. McComb, Deputy,* for respondent State.

DORE, J.—This appeal involves consolidated cases wherein defendants Marquez, Kollmar, and Wurm appeal convictions for driving while under the influence of intoxicating liquor (DWI). The issue raised is: were defendants denied access to counsel prior to submitting to Breathalyzer tests?

### Marquez

Donald B. Marquez was arrested for driving while under the influence of intoxicating liquor on April 5, 1980 between 3:20 a.m. and 3:40 a.m. The arresting officer transported the defendant to the police station, and there advised the petitioner of his implied consent rights under Initiative 242, § 1 and pursuant to RCW 46.20.308. He was not, however, advised that he had a right to counsel or the right to consult with an attorney prior to deciding whether or not to take a Breathalyzer examination.

Marquez agreed to submit to a chemical test of his breath and a Breathalyzer test was administered at 4:07 a.m. The trooper did not attempt to interview the petitioner until after the Breathalyzer test was completed, and the petitioner was subsequently advised of his *Miranda* rights.

### Kollmar

Defendant Melody Kollmar was stopped on May 30, 1980 at approximately 1:30 a.m. in Snohomish County. The trooper testified he observed her driving at excessive speeds, paced the vehicle and later arrested the driver. On initial contact, the trooper noticed the smell of intoxicants from Kollmar's person and asked her how much she had to drink. She replied, "a couple". The officer asked the petitioner to step from the vehicle and perform some physical sobriety tests. He later placed her in the back of his vehicle and informed her she was under arrest for driving while under the influence. According to the trooper, Kollmar was

visibly upset when he verbally advised her of her constitutional *Miranda* rights. He testified he did not ask the petitioner if she understood those rights nor did she say anything at that time. She was then transported to the Snohomish County Jail where she was asked to submit to a Breathalyzer test and was advised of her implied consent rights. She agreed to the test. Upon completion of the test, Kollmar was again advised of her constitutional rights, which she waived in a written statement. No attorney was requested or furnished at any stage of the proceedings.

## Wurm

Defendant Michael P. Wurm was driving erratically when he was observed and stopped at 1 a.m. on March 16, 1980. The trooper noticed the odor of alcohol, and had Wurm get out of his car to perform field sobriety tests. Wurm was then advised he was under arrest and placed in the back of the patrol car. Wurm was taken to the police station where he was given his *Miranda* warnings, including his right to have counsel during questioning. The form in part stated:

3. I have the right at this time to an attorney of my own choosing and have him present . . . during questioning and the making of any statements;

4. If I cannot afford an attorney, I am entitled to have one appointed for me by a court without cost to me and have him present . . . during questioning and the making of any statements.

Clerk's Papers, at 15. Wurm signed this form and answered various questions about his consumption of alcohol in the hours preceding his arrest. He then signed the implied consent warnings form. He was administered a Breathalyzer test, and was charged with driving while intoxicated.

## I

The District Court in the Kollmar and Marquez cases granted the defendants' motions to dismiss. Relying on *State v. Fitzsimmons*, 93 Wn.2d 436, 610 P.2d 893, *vacated* 449 U.S. 977 (1980), the court held that a defendant must

be advised of his right to counsel before a Breathalyzer test may be given. The State applied for a writ of certiorari to review both cases in superior court. The cases were consolidated, and the Superior Court reversed both dismissals, remanding the cases for trial. The Court of Appeals affirmed, holding that *Fitzsimmons* requires that the right to counsel attaches when a Breathalyzer test is given, but that *Fitzsimmons* does *not* require that suspects be informed of that right if they don't request counsel. *State ex rel. Juckett v. Evergreen Dist. Court,* 32 Wn. App. 49, 54–55, 645 P.2d 734 (1982).

In the Wurm case, the defendant moved to dismiss the DWI charge on the ground that he had not been advised of the right to counsel. The District Court denied the motion and found Wurm guilty on stipulated facts. The Court of Appeals affirmed, holding that the *Miranda* warnings Wurm received before the Breathalyzer test was given were sufficient to apprise him of his constitutional rights.

## II

■ We begin our analysis by examining the nature and source of the right to counsel at issue. It is well settled that an accused has a Sixth Amendment right to counsel at any critical stage in a criminal prosecution. *Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970); *United States v. Wade,* 388 U.S. 218, 224–25, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). However, under the holding in *Kirby v. Illinois,* 406 U.S. 682, 689–90, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972), no such Sixth Amendment right attaches until after the initiation of formal judicial criminal proceedings:

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intrica-

cies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.

In *State v. Fitzsimmons, supra* at 444, this court relied on *Kirby* to determine when the defendant's Sixth Amendment right to counsel attached in a DWI prosecution. In that case, the police officer stopped the defendant, arrested him, and *issued a citation* for driving while under the influence of intoxicating liquor, all prior to administering the Breathalyzer test:

> When Officer Knies cited the defendant for driving while under the influence of intoxicating liquor, criminal proceedings were "initiated." RCW 46.64.010, .015; *Mercer Island v. Crouch*, 12 Wn. App. 472, 475, 530 P.2d 344 (1975). Issuance of a citation charging Mr. Fitzsimmons with the crime of driving while under the influence of intoxicating liquor required him to answer that charge in a judicial court and confronted him with the "prosecutorial forces of organized society." The criteria of *Kirby* had thus been met.

And defendant was entitled to be advised he had a right to counsel.

The record in the present case reveals that *none* of the three defendants received formal *citations* charging them with driving under the influence prior to submitting to the Breathalyzer. Defendants Wurm and Kollmar were asked to perform field sobriety tests, and subsequently were arrested and advised of their *Miranda* rights. After submitting to the Breathalyzer test, Wurm and Kollmar received formal citations. Defendant Marquez was arrested and transported to the police station where a Breathalyzer test was administered. He was advised of his *Miranda* rights after submitting to the Breathalyzer and subsequently received a formal citation for driving under the influence of intoxicating liquors. Unlike the case in *Fitzsimmons*, administration of the Breathalyzer test to these defendants preceded the issuance of formal citations.

As no citations had been issued to the three subject

defendants prior to taking the Breathalyzer test, *Kirby v. Illinois, supra,* and *State v. Fitzsimmons, supra,* dictate that defendants had no Sixth Amendment right to counsel at this stage. The "criminal prosecution" to which the Sixth Amendment guaranties are applicable had not yet commenced. *United States v. Mandujano,* 425 U.S. 564, 48 L. Ed. 2d 212, 96 S. Ct. 1768 (1976).

While no Sixth Amendment right attached at the pre-citation stage, the defendants had a right to counsel under JCrR 2.11(c):

> (1) When a person is taken into custody he shall immediately be advised of his right to counsel. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge.
>
> (2) At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer.

We must, therefore, determine whether these defendants were sufficiently advised of their right to counsel prior to submitting to the Breathalyzer test.

█ Once a person suspected of DWI is not free to leave the scene and/or is placed in custody, *Miranda* warnings, including the right to counsel, must be given. *State v. Darnell,* 8 Wn. App. 627, 508 P.2d 613, *cert. denied,* 414 U.S. 1112 (1973). Defendants now argue that *State v. Fitzsimmons, supra,* also mandates that police officers further advise defendants of their right to counsel with specific reference to whether or not they should take the Breathalyzer test. We disagree. In *Fitzsimmons,* the defendant, after being advised of his *Miranda* rights, requested an attorney prior to submitting to the Breathalyzer. We held the refusal to comply with this request violated defendant's right to counsel under both the Sixth Amendment and JCrR 2.11.

In the present case, none of the defendants requested access to counsel prior to submitting to the Breathalyzer. We hold that when defendants are put in custody, police officers must give *Miranda* warnings, including the right to counsel, prior to administering the Breathalyzer test. If the defendant requests the assistance of counsel, access to counsel must be provided before administering the test. JCrR 2.11(c)(2); *State v. Fitzsimmons, supra.* However, if *Miranda* rights have already been given, it is not necessary to again tell defendant that he has a right to counsel to advise him whether or not he should take the Breathalyzer test.

CONCLUSION

Defendants Wurm and Kollmar were given *Miranda* warnings immediately after being placed under arrest and before submitting to the Breathalyzer. These warnings were sufficient to advise them of their right to counsel. The District Court found Wurm guilty of driving while under the influence of intoxicating liquor. His conviction is affirmed. Kollmar's case comes here on appeal from an order of the Superior Court, reversing the District Court's dismissal of the charges against her. The Superior Court order is affirmed, and her case is remanded to District Court for trial.

Defendant Marquez, however, received no *Miranda* warnings until after he submitted to the Breathalyzer test almost 1 hour after being taken into custody. He was not advised of his right to counsel as required by JCrR 2.11. The *Miranda* warnings came too late to satisfy the requirement that he had a right to counsel when he was arrested or taken into custody. As Marquez was not given his *Miranda* warnings and was not specifically advised he had a right to an attorney to advise whether or not he should take the Breathalyzer test, all evidence secured through the Breathalyzer and/or other tests must be suppressed. The

832

Marquez case is also remanded for trial in accordance with the provisions of this opinion.

WILLIAMS, C.J., and ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., concur.
STAFFORD and PEARSON, JJ., concur in the result.