[Nos. 12654-1-II; 13910-3-II. Division Two. July 1, 1992.]

JAMES ALLEN BURNETT, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

LARRY GASAWAY, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

254

*William K. Thayer* and *Schauermann & Thayer;* and *Mark Muenster,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *James R. Silva, Assistant,* for respondent.

MORGAN, A.C.J. — After being separately arrested for driving under the influence of alcohol, Larry Gasaway and James Burnett refused to consent to breath tests designed to detect the quantity of alcohol in their bodies. The Department of Licensing revoked their driver's licenses. The Superior Court affirmed. We also affirm.

On April 4, 1989, Gasaway was arrested for DWI and asked to take a breath test. He was warned that he had a right to refuse the test, but that if he refused, his driving privilege would be revoked. He was also warned that refusal might be used against him at trial, and that he had a right to an additional independent test at his own expense. After acknowledging that he understood the warnings, he refused the test. Ultimately, he entered a deferred prosecution program.

The Department of Licensing revoked Gasaway's driving privilege for 1 year on grounds that he had refused the breath test. He appealed the revocation to superior court. He also petitioned for declaratory judgment and writ of mandamus, the object of both being to compel the Department to issue him an occupational permit. The Superior Court affirmed the revocation and declined to compel the Department to issue an occupational permit. This appeal followed.

Burnett's case is basically the same. On April 12, 1987, he was arrested for DWI, asked to consent to a breath test, and given the above warnings. He then refused to take the test. Later, he entered a deferred prosecution program as opposed to pleading guilty or going to trial on the DWI.

Because he had refused the breath test, the Department revoked his license for 1 year. He appealed to the superior court and also petitioned for an order compelling the Department to grant him an occupational permit. The Superior Court denied relief on both issues, and he now appeals to this court. His appeal has been consolidated with Gasaway's.

Gasaway and Burnett make two major contentions. First, they say that they were not adequately warned of the consequences of refusing to take a breath test and that as a result, their licenses were not validly revoked. Second, they say that even if their licenses were validly revoked, they are entitled by law to occupational driving permits.

I

RCW 46.20.308(1) provides that a person arrested for DWI is deemed to have consented to a test of the alcohol content of his breath or blood. RCW 46.20.308(5) allows the arrested driver to withdraw this fictionalized consent and refuse to be tested. RCW 46.20.308(6) and RCW 46.20-.311(2) state that refusal to take the test will result in license revocation for 1 year if it is the first refusal within 5 years, and for 2 years if it is the second refusal within 5 years.[1]

RCW 46.20.308(2) requires an arresting officer to inform a driver of certain rights. It provides:

> The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing . . .. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

Refusal to take a breath test triggers an administrative process in which the Department of Licensing revokes the person's driver's license. RCW 46.20.308(6). However, the

---

[1] In contrast, a person convicted of driving while intoxicated has his or her license suspended for 90 days on a first offense or revoked for 1 year on a second offense within a 5-year period. RCW 46.61.502; RCW 46.61.515.

driver is afforded an opportunity for a hearing to determine whether the law enforcement officer had reasonable grounds to believe the licensee had been under the influence of intoxicating liquor, and whether the licensee: (a) was validly placed under arrest; (b) was fully advised and warned of his or her implied consent rights and consequences; and (c) refused the officer's request to submit to the test. RCW 46.20.308(7). If the revocation order is sustained, the licensee is entitled to a trial de novo in superior court. *Department of Motor Vehicles v. Andersen*, 84 Wn.2d 334, 340, 525 P.2d 739 (1974); RCW 46.20.308(8); RCW 46.20.334.

Gasaway and Burnett concede that their arrests were valid and that they were warned that withdrawal of their consent would result in revocation of their licenses. Nevertheless, they make two arguments designed to show that their licenses were invalidly revoked.

The first argument is that they were entitled to be informed of the period for which their licenses would be revoked; that they were not so informed; and that this omission invalidates the revocation of their licenses. Washington courts have twice declined to read into RCW 46.20.308 a requirement that the arresting officer advise an arrested person of the specific period for which his or her license will be revoked if he or she withdraws consent to a breath test. *Roethle v. Department of Licensing*, 45 Wn. App. 607, 726 P.2d 1001 (1986), *review denied*, 107 Wn.2d 1030 (1987); *Pryor v. Department of Motor Vehicles*, 8 Wn. App. 953, 509 P.2d 1018 (1973). Courts in other jurisdictions have similarly refused to read durational warning requirements into their implied consent statutes. *See, e.g., Clark v. Muzio,* \_\_\_ Conn. Supp. \_\_\_, 516 A.2d 160, 164 (1986), *aff'd*, 14 Conn. App. 212, 540 A.2d 1063 (1988); *Commonwealth Dep't of Transp. v. Sinwell*, 68 Pa. Commw. 605, 450 A.2d 235 (1982); 2 D. Nichols, *Drinking/Driving Litigation* § 20:16 (1989). Following these precedents, we hold that Gasaway and Burnett were not entitled to be advised of the period for which their licenses would be revoked following a with-

drawal of consent, and that the Department's power to revoke their licenses was not affected by the lack of such advice.[2]

■ The second argument is that they were entitled to be informed that they would be ineligible for occupational permits if they withdrew their consent to be tested; that they were not so informed; and that this omission invalidates the revocation of their licenses. In Washington, the Legislature has provided that a driver must be given the warnings set forth in RCW 46.20.308(2). That statute does not require a warning that the driver will be ineligible for an occupational permit if he refuses a breath test. By necessary implication, then, there is no statutory requirement that such a warning be given. *See Roethle*, 45 Wn. App. at 610; *Pryor*, 8 Wn. App. at 955-56; *People v. Honaker*, 127 Ill. App. 3d 1036, 469 N.E.2d 1120 (1984); *Sinwell*, 68 Pa. Commw. at 608.

Gasaway and Burnett attempt to overcome the absence of any statutory requirement by asserting constitutional due process. They say that constitutional due process requires notice, and that notice is constitutionally adequate in the present context only if a driver is advised that refusal to take a breath test will cause him or her to be ineligible for an occupational permit.

■ When there is probable cause to arrest for DWI, the police are constitutionally permitted to draw and test the driver's blood for alcohol, using appropriate medical methods. *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *South Dakota v. Neville*, 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983).[3] Whether a driver has a

---

[2]In an attempt to overcome this case authority, Gasaway and Burnett contend that RCW 46.20.311, which delineates the time periods for which drivers' licenses shall be revoked, must be read into the implied consent warnings contained in RCW 46.20.308(2). However, we are not persuaded. If the Legislature had intended to require warnings that included the duration of the revocation, it could easily have written such a warning into RCW 46.20.308(2). We conclude that the contention must be addressed to the Legislature rather than the courts.

[3]These cases construe the federal constitution. Appellants make no argument and cite no authority to show that the Federal and Washington Constitutions

right to refuse is a matter of legislative grace, and whatever right the Legislature chooses to grant may be constitutionally conditioned. *Neville*, 459 U.S. at 560-65; *State v. Long*, 113 Wn.2d 266, 272, 778 P.2d 1027 (1989). The Washington Legislature has seen fit to provide that a driver arrested for DWI must be afforded an opportunity to make a knowing and intelligent decision on whether to take or refuse a breath test. *State v. Bartels*, 112 Wn.2d 882, 886, 774 P.2d 1183 (1989); *State v. Whitman Cy. Dist. Court*, 105 Wn.2d 278, 281-82, 714 P.2d 1183 (1986); *Welch v. Department of Motor Vehicles*, 13 Wn. App. 591, 592, 536 P.2d 172 (1975). However, it has also seen fit to provide that such opportunity is adequately afforded by giving the warnings set forth in RCW 46.20-.308(2). Such warnings include a statement that the driver's license will be revoked upon refusal to take a breath test. They clearly imply that upon refusal to take a breath test, the driver will be left without any driver's license for some period of time. They have no tendency to mislead a driver into thinking that he or she will be entitled to any form of substitute license following refusal to take a test. Thus, even though they lack a provision requiring that a driver be informed of his or her ineligibility for an occupational permit upon refusal to take a breath test, they constitute a fundamentally fair way of implementing the Legislature's choice to provide drivers with an opportunity to decide whether or not to take a breath test, *see South Dakota v. Neville, supra*, and they do not violate due process of law.

## II

RCW 46.20.391 empowers the Department of Licensing to grant occupational driving permits and sets forth the criteria for eligibility. RCW 46.20.391(1) provides in pertinent part:

> Any person licensed under this chapter who is convicted of an offense relating to motor vehicles for which suspension or revocation of the driver's license is mandatory, other than

are different, although Burnett does mention the Washington Constitution in his brief.

vehicular homicide or vehicular assault, may submit to the department an application for an occupational driver's license.

RCW 46.20.391(2) provides that an applicant is eligible for a permit only if he or she (a) within the previous year, has not been convicted of a traffic offense that requires mandatory suspension; (b) within the previous 5 years, has not been convicted of DWI, vehicular homicide or vehicular assault; (c) engages in an occupation to which driving is essential; and (d) files proof of financial responsibility. WAC 308-104-100 provides that the Department shall grant an occupational permit to all eligible applicants.

On its face, RCW 46.20.391 does not authorize the Department to issue an occupational permit to a driver whose license has been revoked due to his or her refusal to take a breath test. As the Supreme Court said when construing a forerunner of the statute in issue here:

RCW 46.20.390, which authorizes the issuance of an occupational license under certain circumstances of hardship, applies only where a person's driver's license has been suspended or revoked because he has been convicted of or has forfeited bail for any first offense relating to motor vehicles, other than negligent homicide or manslaughter. The occupational license authorized is a restricted license, which does not carry with it all of the privileges of an ordinary license. Persons who have refused a chemical breath test, when asked to submit to such a test under the prescribed circumstances, are not among those who are given the benefits of this statute.

(Footnote omitted.) *State v. Womack*, 82 Wn.2d 382, 385-86, 510 P.2d 1133 (1973).

Burnett argues that when a driver refuses to take a breath test he commits an offense; and that when the Department revokes his driver's license due to the refusal, it "convicts" him of that offense within the meaning of RCW 46.20.391(1). Thus, Burnett says, an otherwise qualified driver whose license has been revoked due to refusal to take a breath test is eligible for an occupational permit.

We disagree. An administrative proceeding to revoke a driver's license is "separate and distinct from the criminal proceedings which might ensue following the arrest of an

offending motorist." *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 900, 774 P.2d 1187 (1989) (quoting *Nowell v. Department of Motor Vehicles*, 83 Wn.2d 121, 124, 516 P.2d 205 (1973)); *Fritts v. Department of Motor Vehicles*, 6 Wn. App. 233, 241, 492 P.2d 558 (1971). Its function is not to punish the licensee, *Fritts*, 6 Wn. App. at 240, and it is not affected by a criminal conviction or acquittal growing out of the same event. *Gonzales*, 112 Wn.2d at 900. It follows that its result is neither a conviction nor an acquittal as those terms are used in the criminal law.[4]

Gasaway argues that to enter a deferred prosecution is to be "convicted of an offense" within the meaning of RCW 46.20.391(1), and that a person so "convicted" is entitled to an occupational permit. Again, however, we disagree. Deferred prosecution is a type of *preconviction* disposition. *State ex rel. Schillberg v. Cascade Dist. Court*, 94 Wn.2d 772, 779, 621 P.2d 115 (1980). It is simply not a conviction.[5] Moreover, for a driver to obtain an occupational permit, it is not enough that he or she be "convicted" of an offense; in addition, the offense must be one involving mandatory suspension or revocation of the driver's license. RCW 46.20.391(1). The statute listing such offenses is RCW 46.20.285. It omits any reference to deferred prosecution, and we are unaware of other authority permitting or requiring the Department to revoke someone's driver's license on the ground that he or she has entered a deferred prosecution program.

---

[4]Our conclusion is fortified by the fact that the argument appears nonsensical when cast in slightly different terms. A DWI arrestee has a statutory right to refuse to take a breath test. *Bartels*, 112 Wn.2d at 885-86; *State v. Whitman Cy. Dist. Court*, 105 Wn.2d at 281. Thus, the argument, if accepted, would mean that a DWI arrestee can be convicted of an offense for exercising a statutory right.

[5]Parenthetically, we note that the Legislature's purpose in providing for deferred prosecution was to provide first-time offenders with treatment while protecting them from the adverse consequences of a criminal conviction. *State ex rel. Schillberg v. Cascade Dist. Court, supra; State v. Glasser*, 37 Wn. App. 131, 678 P.2d 827, *review denied*, 102 Wn.2d 1008 (1984). Treating a deferred prosecution as a conviction would defeat this legislative purpose.

■ Finally, both appellants argue that to deny them occupational permits is to violate their right to equal protection of the laws. Other jurisdictions have denied similar equal protection challenges. *State v. Breed,* 111 Idaho 497, 501, 725 P.2d 202, 206 (Ct. App. 1986); *DeScala v. Motor Vehicle Div. of Dep't of Rev.,* 667 P.2d 1360, 1362 (Colo. 1983); *Gableman v. Hjelle,* 224 N.W.2d 379, 383 (N.D. 1974); *Pepin v. Department of Motor Vehicles,* 275 Cal. App. 2d 9, 11, 79 Cal. Rptr. 657, 659 (1969). *See also Porter v. Jensen,* 223 Neb. 438, 390 N.W.2d 511 (1986); *Murray v. Thorneycroft ex rel. State,* 131 Ariz. 156, 639 P.2d 346 (1981); *Winter v. Mayberry,* 533 P.2d 968 (Okla. 1975); *Heer v. Department of Motor Vehicles,* 252 Or. 455, 450 P.2d 533 (1969). We do likewise.

Affirmed.

ALEXANDER, J., and WORSWICK, J. Pro Tem., concur.