[No. 14838-2-II.    Division Two.    July 14, 1993.]

JERRY N. JOHNSON, *Appellant*, v. THE DEPARTMENT
OF LICENSING, *Respondent*.

328

*Craig A. Ritchie* and *Doherty, Doherty & Ritchie,* for appellant.

*Christine O. Gregoire, Attorney General,* and *John S. Barnes* and *James R. Silva, Assistants,* for respondent.

SEINFELD, A.C.J. — Jerry Johnson appeals the revocation of his driver's license following his refusal to submit to a breath alcohol test. He claims that the arresting officer did not give him an adequate warning of his rights, denied him counsel, and did not "request" that he take the test. He also claims statutory deficiencies with the trooper's report to the Department of Licensing.

On February 24, 1989, at 10:57 p.m., Trooper Bret Yacklin arrested Johnson for driving while under the influence of intoxicating liquor. Johnson contends that Yacklin asked him to take a breath test on a portable Breathalyzer that the trooper had with him. The record is unclear whether Johnson took the field sobriety test. However, it is undisputed that Yacklin transported Johnson to the Clallam County Sheriff's office to administer a breath test on the BAC Verifier DataMaster machine. While Yacklin and Johnson waited in the lobby for the BAC machine to be available,

Yacklin read Johnson his *Miranda*[1] rights and asked Johnson to waive them. Johnson refused.

Johnson testified that he asked three times to contact an attorney before finally refusing to take the breath test. Yacklin disagreed, testifying that Johnson never requested an attorney, either at the scene or at the sheriff's office. In discussing the contradictory testimony, the trial court noted that Johnson's testimony was "incredible" and orally found that Johnson did not ask for an attorney until after he was in jail. The trial court did not enter explicit written findings regarding Johnson's request for counsel.

Yacklin next gave Johnson the implied consent warning, advising him he was under arrest for driving under the influence and

> [f]urther, you are now being asked to submit to a test of your breath which consists of two separate samples of your breath, taken independently, to determine alcohol content. You are now advised that you have the right to refuse this breath test; that if you refuse, your privilege to drive will be revoked or denied by the Department of Licensing; and that you have the right to additional tests administered by a qualified person of your own choosing and at your own expense and that your refusal to take the test may be used in a criminal trial.

Yacklin did not state, and Johnson did not ask, the length of the revocation period or whether Johnson would be permitted to drive with an occupational permit during the revocation period. Nor did Johnson ask for any explanation of his rights.

Johnson refused to sign the form acknowledging receipt of this warning. Yacklin then asked, "Will you now submit to a breath test?" Johnson replied, "No". A little after midnight, Yacklin set up the breath test machine and again asked Johnson if he would submit to a breath test. Johnson again said, "No".

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Later, Yacklin filled out a "Report of Refusal To Submit to Breath/Blood Test". The report is a Department of Licensing form with spaces for information about the driver, the date and time of the arrest, and the name and signature of the arresting officer. Preprinted on the form, after the driver's information, is the following:

> At that time [of arrest] there were reasonable grounds to believe that the aforementioned person [Johnson] had been driving or was in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor. The afornamed [sic] individual was requested to submit to a breath/blood test and was informed of the consequences of refusal, and rights under RCW 46.20.308. The aformentioned [sic] person then refused to submit to the requested test.

After reading a sentence at the bottom of the form stating, "I certify (or declare) under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct", Yacklin signed the form.

Yacklin sent the form to the Department of Licensing and the Department revoked Johnson's privilege to drive a motor vehicle in the state of Washington for 1 year. Johnson sought and received a formal administrative hearing, resulting in a final order sustaining the revocation. Johnson then filed a notice of appeal in the Clallam County Superior Court. After a de novo hearing, the trial court sustained the revocation.

The implied consent statute, RCW 46.20.308, requires that the State provide a driver the opportunity to make a knowing and intelligent decision whether to consent to an evidentiary breath test. *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 896, 774 P.2d 1187 (1989). On appeal, Johnson suggests that his refusal to submit to the breath test was not knowing and intelligent because he was confused by the implied consent warnings as given, by his lack of access to an attorney, and by Yacklin's earlier request that he take a breath test in the field.

Johnson argues that Trooper Yacklin's warning as to the consequences of refusing to submit to a breath test was inaccurate and incomplete. He claims the warning was defi-

cient because it included a statement that additional tests would be "at your own expense", and because it did not include information regarding the length of the revocation period or the availability of an occupational permit. His arguments lack merit.

An arresting officer is required to inform the arrested driver of the driver's rights under the implied consent law and of the consequences of exercising those rights. RCW 46.20-.308(2). The statute states, in part, that the officer must advise the driver of his or her right to refuse the breath test, that the driver's privilege to drive will be revoked or denied if he or she refuses to submit to the test, and that the driver has the right to have additional tests administered by any qualified person of his or her choosing. An indigent person is entitled to reimbursement from public funds for the cost of an additional test. CrRLJ 3.1(f); *Gonzales*, 112 Wn.2d at 898; *State v. Dunivin*, 65 Wn. App. 501, 503, 828 P.2d 1150, *review denied*, 120 Wn.2d 1002 (1992). Johnson was not indigent and thus was not prejudiced by the inclusion of the "at your own expense" language. *See Gonzales*, 112 Wn.2d at 899, 901; *Dunivin*, 65 Wn. App. at 504. Nor was Yacklin required to inform Johnson of the period of revocation or the availability of an occupational permit, *Burnett v. Department of Licensing*, 66 Wn. App. 253, 257-59, 832 P.2d 1321 (1992), and Johnson asked about neither. Johnson has failed to demonstrate that the implied consent warnings as given were insufficient or confusing.

Johnson also claims the trial court erred in failing to find that he was denied access to counsel. A driver arrested for driving while intoxicated must be advised of his *Miranda* rights so that he can intelligently respond to a police interrogation request and understand his constitutional and court rule rights of access to counsel. *State v. Staeheli*, 102 Wn.2d 305, 309, 685 P.2d 591 (1984); CrRLJ 3.1. After the police advise a defendant of his rights, "*[i]f the defendant requests the assistance of counsel*, access to counsel must be provided before administering the test." (Italics ours.) *State ex rel.*

*Juckett v. Evergreen Dist. Court*, 100 Wn.2d 824, 831, 675 P.2d 599 (1984).

■ Johnson contends that he requested and was denied counsel after being advised of his right to counsel. However, the trial court found otherwise, stating in its oral decision:

Therefore, I find that Mr. Johnson did not ever ask for access to an attorney until after he was in a cell and the jailer did allow such a request.

Although the trial court did not make an explicit written finding to this effect, we look to the court's oral decision to supplement and interpret its findings. *State v. Motherwell*, 114 Wn.2d 353, 358 n.2, 788 P.2d 1066 (1990); *In re LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986); *Wolf v. Department of Motor Vehicles*, 27 Wn. App. 214, 217, 616 P.2d 688 (1980).

■ The trial court must determine disputed facts by weighing the credibility of witnesses' testimony. We uphold a finding of the trial court that is supported by substantial evidence. *State v. Thetford*, 109 Wn.2d 392, 396, 745 P.2d 496 (1987). Such is the case here. The trial court did not err in failing to find that Johnson requested and was denied access to counsel. *See Juckett*, 100 Wn.2d at 830-31; *State v. Halbakken*, 30 Wn. App. 834, 835-37, 638 P.2d 584 (1981).

■ Nor was Johnson's opportunity to make an intelligent decision destroyed by the State's alleged earlier request, not preceded by a warning, that Johnson take a breath test at the scene of the arrest. *Schoultz v. Department of Motor Vehicles*, 89 Wn.2d 664, 668, 574 P.2d 1167 (1978). "As long as the explanation is given, the refusal follows that explanation, and the revocation is based on that informed refusal, the requirements of the statute have been met." *Schoultz*, 89 Wn.2d at 668. The trial court did not err in failing to find that Johnson was confused and thus unable to make an intelligent decision not to consent to the breath test.

■ Johnson also raises as an issue whether the State violated his right to remain silent by questioning him after he had refused to waive his *Miranda* rights. However, Johnson fails to discuss this issue in his brief. We will not con-

sider an issue that is not supported by argument and citation of authority. *McKee v. American Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

■ Johnson also contends Yacklin was required to "request" that he submit to the test and that the question "Will you now submit to a breath test?" is not a request. According to *Webster's Third New International Dictionary* 1929 (1969), a request is "the act of asking for something (as an object, a favor, or some action desired)". We hold that "Will you now submit to a breath test?" meets the definition of a request.

Johnson also challenges Yacklin's report to the Department of Licensing, contending it was deficient because it did not contain all statutorily mandated information and that, because of this deficiency, the Department lacked jurisdiction to revoke his license.

■■ The officer's report is a jurisdictional prerequisite to revocation proceedings; the Department must prove its existence at the de novo trial. *Borger v. Department of Licensing*, 51 Wn. App. 942, 945, 756 P.2d 153, *review denied*, 111 Wn.2d 1016 (1988); *Waid v. Department of Licensing*, 43 Wn. App. 32, 36, 714 P.2d 681, *review denied*, 105 Wn.2d 1015 (1986). The law requires the officer to report that the driver refused the test "after being informed that refusal would result in the revocation of the person's privilege to drive . . .". RCW 46.20.308(6). Yacklin's report to the Department stated that Johnson refused after he "was informed of the consequences of refusal, and rights under RCW 46.20.308." The "consequences" and "rights" found in RCW 46.20.308 contain the information that refusal results in revocation.

■ Furthermore, since Yacklin testified at the de novo hearing, any technical deficiencies in the report are irrelevant. *See Waid*, 43 Wn. App. at 37. A report containing virtually identical language[2] was approved in *Post v. Depart-*

---

[2] "I requested the aforenamed individual to submit to a chemical breath test and informed him of the consequence of his refusal and his rights under RCW 46.20.308." *Post v. Department of Motor Vehicles*, 9 Wn. App. 878, 880, 515 P.2d 844 (1973).

*ment of Motor Vehicles*, 9 Wn. App. 878, 515 P.2d 844 (1973). The *Post* court stated that the report "is not required to delineate with particularity those facts which were related to the motorist." *Post*, 9 Wn. App. at 882. The language of Yacklin's report met the statutory requirements.

Finally, Johnson argues that Yacklin's report, signed under penalty of perjury, is not the "sworn report" required by RCW 46.20.308(6). In 1981, the Legislature enacted RCW 9A.72-.085. Laws of 1981, ch. 187, § 3, p. 854. That statute provides that an unsworn statement "certified or declared by the person to be true under penalty of perjury" may be substituted for a sworn statement whenever a sworn written statement is required or permitted by law to evidence or prove a matter in an official proceeding. The statute provides a form, and Yacklin's certification was in that form.

Johnson argues that RCW 9A.72.085, as applied to RCW 46.20.308(6), violates the state constitution because it amends RCW 46.20.308(6) by implication and because it is being used in civil proceedings when the title of the act refers only to "crimes and criminal procedure". We disagree; a certification made under penalty of perjury pursuant to RCW 9A.72.085 may be substituted in place of the sworn statement required by RCW 46.20.308(6).

The act containing RCW 9A.72.085 is a complete statute, and the Legislature enacted it after RCW 46.20.308(6). It redefines perjury to include unsworn statements and allows the general use of unsworn statements in place of notarized statements. Laws of 1981, ch. 187. Modification of existing law by a complete statute is constitutional. *Washington Educ. Ass'n v. State*, 97 Wn.2d 899, 903-04, 652 P.2d 1347 (1982). Since RCW 9A.72.085 permits but does not require substitution of a certified statement for a sworn report, it supplements RCW 46.20.308(6); this also is constitutional. *See Vasey v. Snohomish Cy.*, 44 Wn. App. 83, 97, 721 P.2d 524 (1986).

As for the title of the act, we note that

a title need not be an index to the contents of a bill. Where the title to any act expresses a single general subject or purpose, all matters which are naturally and reasonably connected with it, or any measures which will further its purpose, will be held to be germane.

*Washington Educ. Ass'n*, 97 Wn.2d at 907 (quoting *Flanders v. Morris*, 88 Wn.2d 183, 188, 558 P.2d 769 (1977)). All the sections of Laws of 1981, ch. 187 relate to the crime of perjury. There is a rational nexus between the title and the section allowing unsworn statements under penalty of perjury, *see Vasey*, 44 Wn. App. at 97, and the title does not make the act unconstitutional.

Further, we note that the use of certified statements has been approved in a number of civil contexts: summary judgment, *Scott v. Petett*, 63 Wn. App. 50, 56-57, 816 P.2d 1229 (1991); in place of an affidavit of prejudice, *State v. Ryncarz*, 64 Wn. App. 902, 903, 826 P.2d 1101, *review denied*, 119 Wn.2d 1020 (1992); and in support of a writ of certiorari, *see Birch Bay Trailer Sales, Inc. v. Whatcom Cy.*, 65 Wn. App. 739, 745, 829 P.2d 1109, *review denied*, 119 Wn.2d 1023 (1992). The substitution allowed by the statute is incorporated in GR 13. Yacklin's certified unsworn statement under penalty of perjury satisfied the statutory requirement for a sworn written statement. *See State v. Monson*, 53 Wn. App. 854, 858, 771 P.2d 359, *aff'd*, 113 Wn.2d 833, 784 P.2d 485 (1989).

Affirmed.

MORGAN, J., and PETRICH, J. Pro Tem., concur.