[No. 33275-2-II.   Division Two.   May 16, 2006.]

*In the Matter of the Estate of* PAULINE STARKEL.

CAROL THOMAS, *Individually and as Personal Representative, Appellant*, v. ARLA WRIGHT, *as Personal Representative, Respondent*.

*Thomas L. Dickson* and *Kevin T. Steinacker* (of *Dickson Steinacker, L.L.P.*), for appellant.

*Brian T. Comfort*, for respondent.

¶1 HUNT, J. — Carol Thomas appeals the trial court's denial of her petition to invalidate her stepmother's will.

She argues the will was invalidly executed because the witnesses neither signed the will nor had notarized their attached self-proving affidavit, as required by RCW 11.20.020. Holding that RCW 9A.72.085 and GR 13 allow witnessing a will by a self-affirming affidavit, we affirm.

## FACTS

¶2 Herman and Pauline Starkel married in 1961. They had children from previous marriages. Herman Starkel's adult children are Carol Thomas, Fred Starkel, and Duke Starkel. Arla Wright is Pauline Starkel's adult daughter.

### I. WILLS

¶3 In 1966, Pauline Starkel executed a will, leaving her entire estate to her daughter, Arla Wright.

¶4 In 1997, Herman and Pauline Starkel executed new wills, placing the majority of their assets in the Starkel Family Living Trust. Upon their deaths, the trust's assets were to be distributed equally among their combined four children. Pauline Starkel's 1997 will left her entire estate to her husband, provided he survived her by 30 days; otherwise, her entire estate again went to her daughter, Arla Wright.

¶5 In July 2001, Herman and Pauline Starkel separated. Pauline Starkel moved to Wright's home in Ritzville and filed a petition to dissolve the marriage. In August 2001, assisted by John Strohmaier, the same attorney who had filed her dissolution petition, Pauline executed a new will, again leaving her entire estate to Wright. The third, and final, page contained only Pauline Starkel's signature and the following sentence: "I have initialed for identification purposes the preceding two (2) pages of this, my Will and have executed the entire instrument by signing the third (3) and last page this 22 day of August, 2001." Clerk's Papers (CP) at 1-3.

¶6 Attached to the three-page will was a document entitled, "Affidavit of Subscribing Witness to the Last Testament of **Pauline Starkel**." This document reads:

1. We are of legal age and competent to be a witness.

2. On the date shown immediately above, Pauline Starkel declared the foregoing instrument to be her Last Will and Testament, signed it in our presence, and requested that we sign as witnesses to the Will and that we make this affidavit.

3. Each of us then, in the presence of Pauline Starkel and each other, did sign below as witnesses to the Will and to make this affidavit.

4. Pauline Starkel appeared to be of sound mind, of legal age, and not under duress or undue influence.

5. Each of us certify, under penalty of perjury, under the laws of the State of Washington, that the foregoing is true and correct.

6. This affidavit is executed at Ritzville, Washington, this 22nd day of August, 2001.

CP at 4. This document bears the signatures of witnesses John Strohmaier, the attorney who prepared the documents, and Joleen R. Kragt, an assistant in Strohmaier's office. Both witnesses are still living.

¶7 In 2002, the Starkels reconciled and Pauline returned to Tacoma to live with her husband. In March 2002, they entered into an agreement as to status of property (Agreement), which revoked the Starkel Family Living Trust and declared all their property, except Herman Starkel's home, to be community property. Under this Agreement, both Starkels retained the power to make a complete and full disposition of his or her half of the undivided community property, regardless of beneficiary designations on their investments.[1]

---

[1] Herman Starkel executed a new will, giving his wife, Pauline, a life estate in his real property, with the remainder divided equally among his three children. The record does not show that Pauline Starkel similarly executed a new will at this time.

## II. WILL CONTEST

¶8 Pauline Starkel died on February 23, 2004.[2] Herman Starkel died the following month on March 26, 2004. Pauline Starkel's daughter, Arla Wright, was appointed personal representative of her estate. Herman Starkel's daughter, Carol Thomas, was appointed personal representative of his estate.

¶9 Thomas, both individually and as representative of Herman Starkel's estate, filed a petition in superior court challenging the validity of Pauline Starkel's 2001 will.[3] A superior court commissioner denied Thomas's petition. A superior court judge denied her motions for revision and reconsideration.

¶10 Thomas appeals.

## ANALYSIS

¶11 Thomas argues that Pauline Starkel's 2001 will is invalid because (1) it was not properly witnessed, (2) the self-proving affidavit was not properly executed, and (3) RCW 9A.72.085 and GR 13 do not apply. We disagree.

### I. WILL ATTESTATION

¶12 RCW 11.12.020(1) prescribes formal requirements for a valid will:

> Every will shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, *or by signing*

[2] The pleadings contain various dates of death for Pauline Starkel: the petition contesting the will states that she died on February 23, 2004, the same date reported in her obituary in *The Tacoma Morning News Tribune*. The order admitting the will states that she died on February 28. CP at 9.

[3] In response to the will contest, the witnesses executed additional affidavits, which were notarized. These affidavits do not pertain to this appeal other than the parties' reference to them during oral argument, the affidavits' further proof of the validity of the 2001 will, and the unimpeachability of the witnesses who signed the original affidavit attached to the will when Pauline Starkel executed her will.

*an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator and at the testator's direction or request: . . . .*

(Emphasis added.) Under this statute, the will (1) must be in writing; (2) signed by the testator; and (3) signed and attested by two or more competent witness, or attested by two witnesses who, in the testator's presence, sign an affidavit complying with RCW 11.20.020(2).

¶13 The statute further provides:

[A]ny or all of the attesting witnesses to a will may, at the request of the testator or, *after his decease*, at the request of the executor or any person interested under it, *make an affidavit before any person authorized to administer oaths*, stating such facts as they would be required to testify to in court to prove such will, which affidavit may be written on the will or *may be attached to the will* or to a photographic copy of the will. The sworn statement of any witness so taken shall be accepted by the court as if it had been taken before the court.

RCW 11.20.020(2) (emphasis added).

¶14 Relying on *In re Estate of Ricketts*, 54 Wn. App. 221, 773 P.2d 93 (1989), Thomas argues that courts distinguish between the validity of a will's execution and proving the will in probate proceedings. *Ricketts* involved a codicil that the testator, but not the witnesses, had signed; instead, the subscribing witnesses' notarized affidavit was stapled to the codicil. The court rejected the codicil because it had not been validly executed under RCW 11.12.020. 54 Wn. App. at 224-25.

¶15 In response to *Ricketts,* in 1990, the legislature amended RCW 11.12.020 to allow self-proving affidavits. *See* LAWS OF 1990, ch. 79, § 1. Acknowledging this legislative change, Thomas nevertheless argues that (1) *Ricketts'* two-part analysis, distinguishing between validly executing a will and proving it for probate, remains good law;[4] and (2)

---

[4] Wright does not appear to contest Thomas's characterization of *Ricketts*. Rather, she emphasizes that (1) the legislature statutorily overruled *Ricketts*; (2) therefore, *Ricketts* has little, if any, relevance to the case before us here; and

therefore, Pauline Starkel's 2001 will was invalid because (a) the witnesses did not sign it and (b) their self-proving affidavit did not comply with RCW 11.12.020—it was neither signed in the testator's presence nor notarized.

¶16 It is uncontroverted that the witnesses did not sign Pauline Starkel's 2001 will. It is controverted, however, whether their attached, self-proving affidavit complies with RCW 11.12.020—the central issue of this case.

## II. Adequacy of Self-Proving Affidavit

¶17 Thomas argues that (1) the witnesses' self-proving affidavit cannot be used to validate the 2001 will because the affidavit is in improper form; (2) because Pauline Starkel's signature page indicates that the entire will is three pages long, the witnesses' affidavit would constitute a fourth page and is, therefore, not part of the will; and (3) the superior court erred in finding the will valid because it failed to apply the strict, statutory requirements. We disagree.

¶18 Aside from lacking notarization, the will's subscribing witnesses' affidavit satisfies all of RCW 11.12.020 express requirements: the affidavit states that it was signed in the testator's presence and that the testator signed her will in their presence. And the affidavit was attached to the will, as the statute specifically allows. Accordingly, we must decide as a matter of law whether the self-proving affidavit's lack of notarization invalidates the will or whether RCW 9A.72.085 and GR 13 apply such that the affidavit validates the will.

## A. RCW 9A.72.085

¶19 RCW 9A.72.085 provides:

Whenever, under any law of this state or under any rule, order, or requirement made under the law of this state, any matter *in*

(3) the execution of Pauline Starkel's 2001 will satisfied applicable statutory requirements.

*an official proceeding* is required or permitted to be supported, evidenced, established, or proved by a person's sworn written statement, declaration, verification, certificate, oath, or affidavit, *the matter may with like force and effect* be supported, evidenced, established, or proved in the official proceeding by *an unsworn written statement,* declaration, verification, or certificate, which:

(1) Recites that it is certified or declared by the person to be true under penalty of perjury;

(2) Is subscribed by the person;

(3) States the date and place of its execution; and

(4) States that it is so certified or declared under the laws of the state of Washington.

The certification or declaration may be in substantially the following form:

"I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct":

..............................................          ..............................................
(Date and Place)                              (Signature)

This section does not apply to writings requiring an acknowledgement, depositions, oaths of office, or oaths required to be taken before a special official other than a notary public.

(Emphasis added.)

¶20 Thomas argues that (1) the legislature's use of the phrase "in an official proceeding"[5] means that legislature never intended RCW 9A.72.085 to apply to will executions; (2) because the will witnesses' affidavit was not prepared in connection with any "official proceeding,"[6] RCW 9A.72.085 does not apply and the will is invalid for lack of proper

---

[5] RCW 9A.72.010(4) defines "official proceeding" as follows:

a proceeding heard before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or depositions.

[6] Thomas argues that Starkels' signing her will involved its execution, not its probate, and, therefore, it is not a matter in an official judicial proceeding. Thomas further notes that the affidavit was not signed before a judge or hearing examiner,

witnessing; and (3) alternatively, RCW 9A.72.085 does not apply because its application would make RCW 11.20-.020(2) redundant. In support, she cites the rule that when more than one statute may apply, the specific statute supersedes the general statute. *In re Estate of Black*, 153 Wn.2d 152, 164, 102 P.3d 796 (2004).

¶21 Wright counters that the self-proving affidavit attached to the will does comply with the statute. We agree. First, the self-proving affidavit complies with RCW 11.12-.020(1) because it was signed by two witnesses in the presence of the testator, Pauline Starkel, at her request. Second, the affidavit complies with RCW 9A.72.085 because it (1) states it is certified under penalty of perjury, (2) is signed by the same persons, (3) indicates the date and place of its execution, and (4) states it was executed under the laws of Washington.

¶22 Moreover, we reject Thomas's contention that because signing and witnessing a will involves merely its execution, not its probate, it is not an "official proceeding" and, therefore, RCW 9A.72.085 does not apply. The purpose of requiring witnesses to a will's execution is to affirm the genuineness of the testator's signature and that the will was properly executed, thereby creating prima facie evidence of the will's valid execution. *Estate of Black*, 153 Wn.2d at 165-66. Only when someone challenges the will's validity does the witnesses' attestation become relevant, thereby subjecting the will to probate, which is clearly an official judicial proceeding within the plain meaning of RCW 9A.72.085. We hold, therefore, that RCW 9A.72.085 applies here to give "like force and effect" to the will witnesses' self-proving affidavit, which complies with that statute's express requirements in lieu of the notarized affidavit otherwise required under RCW 11.12.020(2).

¶23 We further note that our holding here is consistent with our holding in *Johnson v. Department of Licensing*, 71 Wn. App. 326, 858 P.2d 1112 (1993), that RCW 9A.72.085

it was not prepared in connection with legislative or administrative proceedings, and no witness indicated an intent that the affidavit be used in litigation.

applied in license revocation proceedings that required a "sworn report." We reasoned:

> That statute provides that an unsworn statement "certified or declared by the person to be true under penalty of perjury" may be substituted for a sworn statement whenever a sworn written statement is required or permitted by law to evidence or prove a matter in an official proceeding. The statute provides a form, and Yacklin's certification was in that form.

71 Wn. App. at 334 (quoting RCW 9A.72.085).[7] The same reasoning applies here.

## B. GR 13

¶24 We now turn to GR 13, which is titled "USE OF UNSWORN STATEMENT IN LIEU OF AFFIDAVIT." GR 13 emphasizes that RCW 9A.72.085 applies in state court proceedings:

> **(a) Unsworn Statement Permitted.** Except as provided in section (b), whenever a matter is required or permitted to be supported or proved by affidavit, the matter may be supported or proved by an unsworn written statement, declaration, verification, or certificate executed in accordance with RCW 9A.72.085. The certification or declaration may be in substantially the following form:
>
> I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:
>
> _____          _____
> (Date and Place)                (Signature)

---

[7] We also found RCW 9A.72.085 constitutional:

The act containing RCW 9A.72.085 is a complete statute, and the Legislature enacted it after RCW 46.20.308(6). It redefines perjury to include unsworn statements and allows the general use of unsworn statements in place of notarized statements. Laws of 1981, ch. 187. Modification of existing law by a complete statute is constitutional. *Washington Educ. Ass'n v. State*, 97 Wn.2d 899, 903-04, 652 P.2d 1347 (1982). Since RCW 9A.72.085 permits but does not require substitution of a certified statement for a sworn report, it supplements RCW 46.20.308(6); this also is constitutional. *See Vasey v. Snohomish Cy.*, 44 Wn. App. 83, 97, 721 P.2d 524 (1986).

71 Wn. App. at 334.

**(b) Exceptions.** This rule does not apply to writings requiring an acknowledgment, oaths of office, or oaths required to be taken before a special official other than a notary public.

¶25 Thomas further argues that GR 13 is even narrower than RCW 9A.72.085 because it is limited to court proceedings, and, like RCW 9A.72.085, it does not extend to will executions. Again, we disagree.

¶26 GR 13 was adopted in 1989 to allow the use of unsworn declarations in place of affidavits:

> GR 13 was adopted in 1989 and was intended to eliminate the need for sworn, notarized affidavits in most court proceedings. The rule allows an unsworn declaration under penalty of perjury to be substituted for an affidavit, with the need for notarization, subject to the narrow exceptions specified in the rule.
>
> The rule was designed to take advantage of RCW 9A.72-.085 . . . .
>
> . . . .
>
> GR 13 was intended to trump provisions in the rules of civil procedure and criminal procedure specifying the use of an affidavit (for example, the provisions specifying that motions may be supported by affidavits).
>
> GR 13 likewise allows the use of an unsworn declaration when a statute specifies the use of a sworn affidavit, subject to the relatively narrow exceptions specified in the rule and statute. See Johnson v. Department of Licensing, 71 Wn. App. 326, 858 P.2d 1112 (1993).

2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE GR 13, Author's Comments at 30-31 (6th ed. 2004).

¶27 Consistent with this court rule, certified statements have been used and approved in many civil contexts. *Johnson*, 71 Wn. App. at 335.[8] We see no reason why GR 13 should not similarly apply in the probate context, and, therefore, we apply it here. The purpose of requiring

---

[8] *See e.g.*, *Scott v. Petett*, 63 Wn. App. 50, 816 P.2d 1229 (1991) (declaration could be used in lieu of an affidavit in summary judgment proceedings; CR 56 use of word "affidavit" not controlling); *Manius v. Boyd*, 111 Wn. App. 764, 47 P.3d 145 (2002) (declaration sufficient as an affidavit of service under CR 5(b)(2)(B) as long as it complied with GR 13 and RCW 9A.72.085).

witnesses to a will's execution is to simplify the probate process and to avoid requiring those witnesses to appear to testify in court. The original, attached, nonnotarized affidavit of the witnesses to Pauline Starkel's 2001 will serve this very purpose. *See* RCW 11.20.020(1)-(2). If, during the will's probate, Thomas legitimately questions whether these witnesses actually watched Pauline Starkel sign her will, or her competency or intent in signing her will, these witnesses can be examined in court.

### III. ATTORNEY FEES

■ ¶28 Wright requests attorney fees and costs under RCW 11.24.050. This statute provides:

> If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court *may* assess the costs against the contestant, including, *unless it appears that the contestant acted with probable cause and in good faith,* such reasonable attorney's fees as the court may deem proper.

RCW 11.24.050 (emphasis added).

¶29 Because we affirm the trial court's ruling sustaining Pauline Starkel's 2001 will, RCW 11.24.050 gives us discretion to award attorney fees to Wright, *unless* it appears that Thomas acted with both probable cause and in good faith. Based on the record before us and the parties' legal arguments, it appears that Thomas did not act in good faith[9] in challenging the validity of Pauline Starkel's 2001 will: over the course of multiple wills and estate arrangements[10] beginning in 1966, Pauline Starkel consistently left her estate to her only daughter, Arla Wright. Thus, Pauline

---

[9] Even if Thomas might have had "probable cause" to challenge whether the will met RCW 11.20.020's technical requirements for witnessing a will, she could not in good faith have challenged Pauline Starkel's clearly expressed intent, over the course of many years and wills, to leave her estate to Wright.

[10] There was, however, a four-year period, from 1997-2001, during which Pauline and Hermann Starkel had originally planned to distribute their joint living trust assets among their four combined children. But the Starkels revoked this trust in 2002, two years before their deaths in 2004.

Starkel's dispositional intent has been historically clear, and Thomas's purely technical challenge to Starkel's will does not show that she acted with probable cause or in good faith. RCW 11.24.050.

¶30 We therefore award Wright reasonable attorney fees and costs incurred in defending the will contest on appeal, in an amount to be determined by our court commissioner. RCW 11.24.050.

¶31 Affirmed.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.

Reconsideration denied June 15, 2006.